## PETROLEUM CASUALTY CO. v. FULTON.
### No. 2875.

Court of Civil Appeals of Texas. El Paso.

Sept. 28, 1933.

Henry G. Russell, of Pecos, and Knox W. Gilmore, of Houston, for appellant.

J. B. Cotten, of Crane, and Hill D. Hudson, of Pecos, for appellee.

HIGGINS, Justice.

This is a suit by Fulton against appellant to set aside an adverse ruling of the Industrial Accident Board upon a compensation claim for accidental injury received by Fulton in the course of his employment by the Humble Pipe Line Company. Upon favorable findings by a jury judgment was rendered awarding compensation to Fulton as for total permanent incapacity.

On October 9, 1930, while in the course of his employment, Fulton was accidentally "gassed," in consequence of which pulmonary tuberculosis later developed. The claim for compensation is based upon this accident.

The accident occurred October 9, 1930. Notice was given appellee's employer the next day. Claim for compensation was not filed with the board until January 22, 1932. Section 4a of article 8307 requires that a claim for compensation with respect to an injury must be made within six months after the occurrence of the same. It further provides that for good cause, in meritorious cases, the board may waive strict compliance with respect to the six months' limitation.

■ A claimant, who fails to file his claim with the board within the six months' period, must show good cause for such failure, not merely during the first six months, but continuing up to the time the claim is filed. Holloway v. Texas Indemnity Ins. Company (Tex. Com. App.) 40 S.W.(2d) 75; Ocean A. & G. Corp. v. Pruitt (Tex. Com. App.) 58 S.W. (2d) 41; New Amsterdam, etc., Co. v. Scott, 54 S.W.(2d) 175.

■ In behalf of appellant it is urged the evidence is wholly insufficient to show that good cause for delay in filing the claim continued up to the date of filing, and that this is particularly true of the period between December 15, 1931, and January 22, 1932.

Appellee's testimony, on direct examination, was to the effect that the inhalation of the gas immediately caused a severe irritation of his eyes, nose, and throat; made him sick at the stomach, nervous, and he was unable to work the next day. The stomach nausea continued for about a week and the throat irritation bothered him for about fifteen days. Shortly after October 9th, he observed a change in his physical condition and ability to work.

"Q. How soon after October 9th was it when you began to observe these changes? A. Well it wasn't so very long after I felt weak and sick, and never did feel the same, and I kept getting dragier and dragier, and finally seemed like I got tired and never got rested.

"Q. You layed off from work because you were sick on July 18th, 1931? A. Yes, sir.

"Q. What was the matter with you? How did you feel? A. I just had that awful tired feeling, and hurt through my chest, and under my shoulder blades—it's hard to explain just how I did feel.

"Q. Did you have a physician? A. Yes, sir, I had a high temperature, in fact I didn't know anything and about eight o'clock the wife got a Doctor.

"Q. Prior to July 18th, 1931, Mr. Fulton had you—and after October 9th, had you had to lay off on account of sickness? A. Yes, sir.

"Q. How many days? A. About four days I believe at one time.

"Q. Do you remember about when? A. Just before 1931.

"Q. What was your condition at that time? A. Well I began coughing, and just had that tired feeling—that was just before Christmas in 1930."

July 18, 1931, he became acutely ill, and on July 26, 1931, was advised by the doctor he had tuberculosis. He remained at home until February 6, 1932, when he went to the State Tubercular Sanitarium at Carlsbad, where he remained until October. After he became acutely ill on July 18, 1931, appellee testified he was in bed most of the time and unable to conduct any business; that he conferred with an attorney, Mr. Cotten, in December, 1931; that his wife took him to Crane to see Mr. Cotten.

"Q. Mr. Fulton why hadn't you filed a claim prior to January 16th, 1932? A. I didn't know what proceedings to take."

It appears the claim was prepared for filing on January 16, 1932.

"Q. You say that you didn't know the proceedings. Had you made any effort to consult anybody prior to the time you filed your suit? A. I talked to some friends of mine that came to see me before I got able to come down here.

"Q. Why didn't you come here prior to January 16th, 1932? A. I wasn't able to make the trip.

"Q. Why weren't you able? A. I was sick.

"Q. Then it is your testimony that on January 16th, 1932, for the first time you were able to come over and consult your Attorney and file your claim? Is that your testimony? A. Yes, sir."

On cross-examination appellee testified substantially as follows: At the request of his wife, Mr. Cotten came to see him in December, 1931, but he did not turn the claim over to him at that time.

"Q. Why didn't you, Mr. Fulton? A. Well I don't know for what reason I didn't; I just didn't feel like fooling with it; I was all in, and didn't feel mentally able to fool with it."

After July 18th until December 18. 1931, he drew three months' sick benefits from his employer.

"Q. Now from July 18th, 1931, up until February 6th, 1932, you were. at home? A. Yes, sir.

"Q. Up and about the place at times and in bed at times? A. In bed most all of the time.

"Q. You came to the Humble Office several times during that period? A. Yes sir I came there to get my check every pay period.

* * *

"Q. You knew you had to file your claim for compensation and had to give notice of your injury—you have been with them and seen them file them? A. I have never been with anybody when they filed a claim.

"Q. Did you ever hear of it? A. Yes, sir.

"Q. You talked to Mr. Cotten and sent for him for this particular purpose? A. Yes sir.

"Q. And then you didn't file any claim? A. No sir because I wasn't able to get here.

"Q. You didn't authorize Mr. Cotten to file it? A. No sir.

"Q. He told you that if you got compensation you would have to file a claim? A. Yes sir.

"Q. Yet you let it go until the 16th of January? A. It was that time before I was able to come over here.

"Q. You were well enough to go to the office and get these checks all during that period? A. No sir not all during that period.

"Q. You made several trips to the office didn't you? A. No sir not every trip.

"Q. How many? A. I was there two or three different times.

"Q. How many trips did you make to the Grocery store? A. I didn't go to the Grocery store. Wait a minute, yes, I did.

"Q. How many times? A. Not very many.

"Q. About how many? A. I don't suppose over three or four times.

"Q. About when was that, do you know? A. Sometime just before my wife brought me down here.

"Q. Down to Mr. Cotten? A. Yes sir.

"Q. How many months before that? A. Not months, just a few days.

"Q. In August did you go out of the house any? A. Yes, go out and lay on the lawn every evening.

"Q. Did you go to town any? A. Once in a while my wife would get me in the car and drive me to town; Dr. Agnew said it would be good for me.

"Q. Did you make any trips to Dr. Agnew's office from July 18th, until February 6th? A. Yes, sir.

"Q. Several? A. No sir not several; I made two or three different trips I guess.

"Q. In September did you go to the Grocery store, or down to the office or go to the Humble Office? A. I don't remember.

"Q. You wouldn't say you didn't? A. Nope.

"Q. In October—how about October? A. I was at the office in October.

"Q. In October, 1931? A. Yes, sir.

"Q. How many times? A. I don't know.

"Q. Can you give us an idea? A. I might have been in there a couple of times in October.

"Q. Your wife was there with you at home all of the time wasn't she? A. Yes sir.

"Q. You could have phoned Mr. Cotten to come down in October 1931 just as good as you did in December? A. I just got through telling you I was so sick I wasn't studying about anything except trying to get well and get back to work.

"Q. How come you to think about it in December? A. The fact of the business is I had some folks come to me and ask me if I wasn't going to try to do anything."

On September 22, 1931, appellee wrote Charles Shaw with the Annuities & Benefits Committee of the Humble Pipe Line Company a letter concerning his condition and requesting assistance.

It appears from appellee's own testimony that the symptoms of his illness manifested themselves shortly after he was gassed, and on July 26, 1931, he learned he was tubercular. The only excuse pleaded for failing to seasonably file his claim with the board after July 26, 1931, is: "That from July 18th, 1931, until on or about the 15th day of December, 1931, plaintiff remained confined to his bed very seriously ill and unable to attend to his business or be up and about in any way; that soon after December 15th, 1931, plaintiff conferred with his attorney relative to filing his claim for compensation; that soon after on or about January 16, 1932, plaintiff did file his claim for compensation with the Industrial Accident Board of the State of Texas."

In his testimony appellee says he was in bed most of the time and unable to conduct any business; but his testimony shows that at times he was up and about, and the facts to which he testifies all show that he was not so disabled, physically or mentally, as would prevent him from filing his claim with the board. There is nothing to suggest that he could not have procured the preparation and filing of his claim by some one with the board at any time after July 26, 1931. In our opinion the evidence is wholly insufficient to excuse the delay in filing until January 22, 1932. Durham v. Texas Indemnity Ins. Co. (Tex. Civ. App.) 60 S.W.(2d) 255; Texas Indemnity Ins. Co. v. Williamson (Tex. Civ. App.) 59 S.W.(2d) 232; Texas Indemnity Ins. Co. v. Bailey (Tex. Civ. App.) 297 S. W. 1042,

reversed on another point in (Tex. Com. App.) 14 S.W.(2d) 798.

The insufficiency of the excuse offered is shown by appellee's own testimony, and there is no occasion to remand the case for retrial of that issue as is suggested in appellee's brief.

Reversed and rendered.