**TEXAS EMPLOYERS' INS. ASS'N v. McGEHEE.**

No. 4163.

Court of Civil Appeals of Texas. Amarillo.
Sept. 24, 1934.

Rehearing Denied Oct. 22, 1934.

Underwood, Johnson, Dooley & Huff, of Amarillo, for appellant.

Simpson, Dorenfield, Foster & Fullingim, of Amarillo, for appellee.

HALL, Chief Justice.

Scott McGehee sued the Texas Employers' Insurance Association to recover compensation claimed to be due him pursuant to allegations which, in substance, are that on or about December 16, 1929, while working as general manager and operator of a gin in the employ of R. E. Patterson, doing business as Patterson & McGehee Gin Company in Floyd county, Tex., and while so working at the press, in some way his right arm was caught in the rollers and injured in various particulars, after which the injured member became infected and plaintiff was confined in

the hospital for a period of about 5½ months, being in a serious and dangerous condition part of the time, and, as the result of said injuries and infection, plaintiff has permanently and totally lost the use of said arm. He also asserts a claim for certain medical, hospital, and incidental expenses aggregating about $1,700 and his prayer is for judgment for compensation due at the maximum rate of $20 per week for 200 weeks on account of his total and permanent injuries and the loss of the use of his arm, and further prays for judgment for the items of medical and hospital expenses. He admitted his failure to file his claim for compensation with the Industrial Accident Board within 6 months from the date of his injury, and as excuse alleged that, immediately following his injury, his arm became severely infected and his physical condition was such that for a period of five and a half months he was confined in the hospital; that as soon as he recovered physically to such an extent that he was able to leave the hospital he at once discussed with his employer, R. E. Patterson, whether or not the defendant was going to acknowledge liability and pay compensation, and was informed by Patterson that the defendant was denying liability and did not intend to make any payment of compensation or defray any expenses, whereupon he at once secured the services of counsel now representing him to collect the compensation due him and the expenses which he had been forced to incur; that he was not familiar with the terms, provisions, and conditions of the Workmen's Compensation Law, and did not know that it was necessary for him to file a claim with the board, but relied upon his attorneys to do all things necessary to protect his interest; that he employed said attorneys about June 6, 1930, and if his claim was not presented within a period of 6 months, it is due to the fact that he was physically unable to present a claim for approximately 6 months; that he then took such steps as he thought necessary to protect his interest as soon as he was able after the injury to do so; that his claim was thereafter filed with the board.

The defendant answered by a general demurrer, several special exceptions, general denial, and a special verified denial, that any policy of compensation was issued by defendant or was outstanding insuring the plaintiff's alleged employer at the time of plaintiff's injury. Also a special plea that the plaintiff was a partner in the business conducted in the name of Patterson & McGehee Gin Company, which operated the gin where plaintiff was injured; that the plaintiff failed to file any claim for compensation with the board within 6 months after the date of his injury, filing said claim for the first time in the month of August, 1931, and had no good cause for such delay or, if he ever had any good cause for a time, it ceased to exist long before the time when plaintiff finally filed his claim for compensation with the board. It further specially pleaded that plaintiff's original petition filed at the time the suit was instituted contained no claim for various alleged medical, hospital, and other incidental expenses set out in plaintiff's amended petition, claim for which was first made at the time said amended petition was filed on the 3d day of November, 1932, which was more than 20 days after the date of the final ruling and decision of the Industrial Accident Board upon plaintiff's claim and more than 20 days after plaintiff served notice of his intention to appeal from said ruling and decision of the board. Wherefore the plaintiff's claim is barred on that account.

In response to special issues, the jury returned a verdict favorable to plaintiff upon every issue, and, based thereon, the court rendered judgment in plaintiff's favor in the sum of $4808, which included the aggregate compensation and all medical and hospital expenses.

By its first proposition the appellant association insists that, because the policy had been issued to Patterson & McGehee, described as a partnership composed of R. E. Patterson and the plaintiff, McGehee, and because when the policy was issued the company understood that the insured was a firm composed of said two members, and still had said understanding at the time of the injuries, it appears that there was no outstanding policy of compensation insurance under which plaintiff could make any valid or lawful claim, and, that being the case, the court erred in not directing a verdict in its favor.

In support of its contention, amongst other cases, the appellant cites the case of Berger v. Fidelity Union Casualty Co. (Tex. Civ. App.) 293 S. W. 235. In that case the surviving wife of O. J. Berger alleged that he was an employee of a copartnership composed of Lee Farrer and F. Kiber; that, though the policy recites that the assured is a copartnership composed of O. J. Berger, Lee Farrer, and F. Kiber, such recital is erroneous, in that as a fact Berger was not at the time of the execution of the policy nor at the time of his death a member of said copartnership, and that her husband's name was erroneously written into the policy by mutual mistake

of the parties to the contract. In its answer the defendant alleged that Berger had led it to believe by his representations that he was a member of the copartnership, and by reason of such representations the defendant did not demand nor collect any premiums for risk or injury to the said Berger as it would have done if Berger had been an employee, that defendant had no means of knowing the status of Berger was other than he represented himself to be, and was induced to its prejudice to issue the contract sued on and to leave the same in force inuring to the benefit of Berger as an insured employee under the liability act, and that by reason thereof plaintiffs were estopped from denying that the said Berger was other than a member of said copartnership. A trial resulted in a judgment for the casualty company et al. The court concluded that the evidence sustained the finding that Berger was a partner and held that he was therefore not entitled to recover.

In the instant case the appellant does not plead any facts relative to the issuance of the policy in the name of the partnership which amount to an estoppel. The facts upon which appellant bases its claim that McGehee was a partner are, in effect, the same as the facts in Millers' Indemnity Underwriters v. Patten (Tex. Com. App.) 250 S. W. 154; Id. (Tex. Civ. App.) 238 S. W. 240. The record shows that Patterson, without the knowledge of McGehee, procured the issuance of the policy in the name of the firm. The evidence discloses that McGehee was not a partner, but had entered into a contract with Patterson whereby he might acquire an interest and become a partner upon certain conditions. As in the Patten Case, these conditions were never fulfilled. Under the well-recognized rule that the real party in interest is entitled to maintain the suit and recover unless he is estopped from suing in his own name, we are of the opinion that McGehee had the right to recover, notwithstanding the issuance of the policy to a partnership which, in fact, never existed.

In the case of Southern Surety Co. v. Eppler (Tex. Civ. App.) 26 S.W.(2d) 697, Eppler claimed to be an employee of Toombs, who he alleges was doing business under the tradename of Toombs & Eppler, and sued to recover under the Workmen's Compensation Act. After paying $20 per week for 4 weeks, the Southern Surety Company declined to make any further payments upon the ground that Toombs & Eppler was a partnership and appellee was one of the partners. The evidence shows that, after the policy was issued, the partnership was dissolved and the surety company's agent was notified of its dissolution; that the agent continued thereafter to receive monthly premiums. Judge McClendon said: "If the question were one of estoppel between the alleged partnership and parties dealing upon the faith of these contracts or representations, a different question would be presented. Here, however, the question is one of the actual relations of Toombs and Eppler, of which the surety company had full knowledge. The evidence was clearly sufficient to support a finding that the partnership had been dissolved."

Patterson testified that he alone procured the issuance of the policy in the name of the firm. McGehee said he made no application for the policy, and did not know what facts or representations were made to the insurance company in order to procure it. Patterson evidently had the policy issued insuring the firm under a mistaken impression that a partnership had been created by the execution of the conditional deed when as a matter of law there was no partnership and McGehee was only an employee. Under such circumstances, McGehee was not bound by the representations made by Patterson in securing the policy without his knowledge or consent, and he is not estopped from denying the alleged fact of partnership.

As said in American Central Insurance Co. v. Heath, 29 Tex. Civ. App. 445, 69 S. W. 235: "Heath did not make any representation as to who composed the firm of Heath & Blackwell, and his silence on that point did not mislead appellant. If it [the Insurance Company] was solicitous as to who composed the firm, it should have interrogated Heath; and, if he had then made statements contrary to the facts, appellant might have some basis for its contention." St. Paul Fire & Marine Insurance Co. v. Culwell (Tex. Civ. App.) 45 S.W. (2d) 347; Bonnet v. Merchants' Insurance Co. (Tex. Civ. App.) 42 S. W. 316.

If the relation of employer and employee, or, in other words, the relation of master and servant, actually existed between Patterson and McGehee, the latter would be entitled to the benefits of the Workmen's Compensation Law, even though the insurance policy named him as a partner where he had made no statements or could not be charged with any conduct which induced the company to issue the policy to the firm which would constitute an estoppel, and for a stronger reason he would not be denied a recovery where the company failed to plead estoppel.

By its second proposition the appellant insists that, because the testimony shows that the plaintiff was injured December 16, 1929, and did not file any claim for compensation with the board until August 24, 1931, and offered no excuse for the delay, save that he was confined to the hospital for about five and a half months next after his injury, and further showed he employed attorneys in June, 1930, to represent him and relied on said attorneys, and failed to show any excuse for the delay of more than a year between the time he employed his attorneys in June, 1930, and the actual filing of his claim in August, 1931, the court should have granted appellant's request for a peremptory instruction in appellant's favor.

By the third and fourth propositions the appellant insists that plaintiff's amended petition, in which he admitted his failure to file his claim for compensation within six months after the date of his injury and in which he attempted to excuse such failure, was subject to a general demurrer; and was also subject to special exceptions urged upon the same ground, which were overruled by the court.

With reference to this feature, the plaintiff alleged in his amended petition as follows: "That on the date of such injury plaintiff gave his employer an oral report and notice of such injury; that said employer had actual knowledge of such injury immediately; that the defendant herein was notified of such accident and injury immediately following same and immediately following said injury plaintiff's arm became severely infected and it was feared that he would lose his life, and his physical condition was such that for a period of five and one-half months he was confined to his bed in the hospital and a majority of the time no one was allowed to see him; that as soon as he recovered to such an extent that he was able to leave the hospital he at once discussed with R. E. Patterson, his employer, as to whether or not the Texas Employers' Insurance Association was going to accept its liability and pay compensation as well as his medical expense which he had to incur. He was informed by Mr. Patterson that the Texas Employers' Insurance Association was denying liability and did not intend to make any payments of compensation or defray any expense, whereupon he at once secured the services of Dorenfield, Foster & Fullingim to represent him in an effort to collect his compensation and the expenses which he had been forced to incur as a result of his injury; that he was not familiar with the terms, provisions and conditions of the Workmen's Compensation Act of this State and did not know that it was necessary for him to file a claim with the Industrial Accident Board but relied upon the lawyers whom he had employed to do any and all things at the proper time to protect his interests; that he saw these lawyers and engaged their services on or about June 6, 1930, and that if the claim was not presented in his behalf within a period of six months and owing to the fact that he was unable to present a claim for a period of approximately six months and that he took such steps as he thought necessary to protect his interests as soon as he was able after the injury to do so, he says that for this reason if a claim was not timely presented, such is good cause why same was not so presented."

The testimony of the plaintiff and his attorney relative to this matter and stated in appellee's brief which we here set out is as follows:

"Q. After you got loose from the machinery, what did you do? A. I was taken to the Smith & Smith Sanitarium here in Floydada.

"Q. How long did you remain in that sanitarium? A. Four weeks or one month.

"Q. State as near as you can what was your physical condition while you were in the hospital during that month, if you know? A. I remember more about it since I got out.

"Q. Just as far as you know. A. It seemed to be pretty bad.

"Q. What do you mean? A. My temperature ran pretty high and blood poison set up and I was pretty bad swollen and had a pretty bad odor.

"Q. Did you go to any other sanitarium other than the sanitarium here in Floydada? A. After I stayed here four weeks I went to Plainview.

"Q. How long did you stay there? A. Ten weeks.

"Q. Then where did you go? A. I went home to where my father and mother lived which is north of Lockney.

"Q. State whether or not you were confined to your home and if so, how long? A. I was confined to my home something like two months.

"Q. How long was it from the date of this injury until you were able to leave your home—until you were able to be up and about? A. It was something like two and one-half or three months.

"Q. From the date of the injury? A. No.

"Q. I am talking about from the date of the injury? A. It was something like six months.

"Q. State what, if anything, you have ever done with reference to trying to collect compensation from the defendant in this case? A. When I was still in the sanitarium I spoke to Mr. Patterson about it. That was about the only means I had of getting information of the sort out and I asked him if he would notify the company.

"Q. Then what else did you do? A. From the position I was in I couldn't do anything.

"Q. What did you do? A. Along about the first day of June, 1930, I went to Amarillo to see a lawyer.

"Q. Who did you see? A. Mr. Fullingim.

"Q. Did you have a conversation with me with reference to this compensation? A. Yes.

"Q. State in substance, as near as you can, what that conversation was? A. I interviewed him and told him the circumstances of my injury, that the insurance company had been notified about it and that there had been nothing done about it and that I wanted to consult a lawyer to see if I could do something to collect my compensation.

"Q. State whether or not you entered into a contract with me at that time? A. Yes, sir.

"Q. State whether or not in so doing you turned over to me the matter to handle and to do such things as I deemed necessary to collect compensation? A. Yes, sir."

Dr. Nichols testified on direct examination as follows:

"Q. When was the first time you saw McGehee? A. December 18, 1929.

"Q. What was Mr. McGehee's condition when you visited him the first time in Floyd-ada? A. It was extremely serious. He had an infection of the arm, gangrene in the arm.

"Q. Was Mr. McGehee conscious as to what was going on at that time? A. Not wholly, no sir."

In further support of such pleadings, John R. Fullingim, attorney for appellee, testified on direct examination as follows: "On or about June 1, 1930, Mr. Scott McGehee came to my office in Amarillo and employed me to represent him in collecting his compensation for an injury and I continued to represent him and still represent him down to this time. Shortly after he came to my office and employed me to represent him, I discussed his claim with R. E. Collier. I talked the matter over with Mr. Collier and he advised me that he would take the matter up with the Dallas office and see what disposition could be made of it. The claim was discussed by Mr. Collier and myself on two or three different occasions. I discussed the claim with Mr. Collier two or three different times before September 12, 1931, and at that time I made and prepared a claim for compensation and addressed an envelope to the Industrial Accident Board and placed in that envelope the original of this claim for compensation and placed it in the United States mail at the post office in Amarillo."

Rev. St. art. 8307, § 4a, provides that no action to recover compensation shall be maintained unless a claim for compensation with respect to such injury shall have been made within 6 months after the occurrence of the same, and further provides: "For good cause the board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice, and the filing the claim before the board."

█ After a careful review of all the authorities we have been able to find, together with those cited in the briefs of counsel, we are forced to the conclusion that these propositions must be sustained.

In Ocean Accident & Guarantee Corporation v. Pruitt (Tex. Com. App.) 58 S.W.(2d) 41, 46, Judge Critz said:

"It is correct to say that the question as to whether good cause exists for not filing the claim within six months as provided in section 4a of article 8307, supra, is ordinarily a question of fact, but it is a question of pleading also, and no question of fact in regard to such matter is presented unless it is first pleaded. Certainly if the pleadings show on their face that good cause did not exist up to the making of the claim no issue in such regard is presented. We think the pleadings of the claimants show on their face that no good cause existed for not filing the claim sooner.

"Finally, it is settled that a claimant for compensation who fails to file his claim w th the board within the statutory period of six months must show good cause for such failure up to the time of filing the claim, and not merely good cause during the first six months. Holloway v. Texas Indemnity Co. (Tex. Com. App.) 40 S.W.(2d) 75. We find nothing in the claimants' pleadings which meets this rule."

It may be admitted that for five and a half months immediately following the injury McGehee has shown a good excuse for failing to file his claim with the board, but, after having employed counsel, there seems to be nothing in the record which would excuse plaintiff's failure to file his claim forthwith. True, his counsel testified that he discussed plain-

tiff's claim with R. E. Collier, who advised counsel that he would take the matter up with the Dallas office and see what disposition could be made of it, and that the claim was discussed with Collier on two or three different occasions. We are not informed by the record what connection or authority Collier had, if any, with the matter or with the Industrial Accident Board. It is not charged that Collier had authority to waive the performance of this duty, either in behalf of the appellant or the board or that he was guilty of any fraud or made any promises which led to a postponement of the filing by plaintiff of his claim. According to his own testimony, plaintiff knew that the appellant had denied liability, basing its contention upon the claim that the plaintiff was not an employee but a member of the firm with Patterson.

In the case of Durham v. Texas Indemnity Ins. Co. (Tex. Civ. App.) 60 S.W.(2d) 255, it appears that on October 30, 1929, plaintiff was injured and failed to file his claim with the board until the 14th day of September, 1931. His excuse for failing to file within the statutory period was that the physicians in the employment of the defendant represented that he would not suffer any permanent injury from the accident, but that his trouble would soon clear up and that the representations had been fraudulently made. Judge Martin held that the statute requiring the claim to be filed within 6 months was jurisdictional, that it was not sufficient that a claimant was able to show good cause for failing to file within the 6 months, but that such good cause must be shown to continue up to the time the claim was actually filed.

In Zurich General Accident & Fid. Ins. Co., Ltd., v. Walker (Tex. Com. App.) 35 S.W.(2d) 115, 117, it appears that the defendant was injured November 10, 1926, and failed to file his claim until December 3, 1927. As good cause for his failure to comply with the law, he alleged that he was not aware his employer carried compensation insurance or that under such law compensation would be allowed for hernia; he having learned such facts only a few days before filing his claim with the board. Judge Leddy, speaking for Section B of the Commission, said that "defendant in error, being conclusively presumed at the time he was injured to have had notice of the fact that his employer had made provision for compensation insurance, cannot plead absence of actual knowledge as good cause for his failure to give notice of his claim and bring suit within the period required by the Compensation Law. Hexter v. Pratt (Tex. Com. App.) 10 S.W.(2d) 692."

In Texas Indemnity Ins. Co. v. Bailey (Tex. Civ. App.) 297 S. W. 1042, 1044, it appears that the claimant was injured on about June 7, 1923, but did not file his claim with the Industrial Accident Board until February, 1926. Bailey testified that he was confined to his bed for some 2 or 3 months following his injury, and that after that he was paralyzed for about a year and physically unable to do anything, and also attributed his continued delay in filing his claim to his ignorance of the law and of his rights thereunder. Judge Baugh said: "He had the same facilities and opportunities open to him to learn his rights in the matter for at least a year before he filed any claim as he had at the time he did file it. Ignorance of the law and of his rights thereunder is no excuse for failure to comply with the express provisions of the statute."

In Texas Indemnity Insurance Co. v. Williamson (Tex. Civ. App.) 59 S.W.(2d) 232, 233 (writ of error granted on other grounds), the facts are that plaintiff Williamson alleged that he was injured on July 29, 1929. On December 5, 1930, he filed his claim for compensation with the board. In disposing of the appeal, Judge Higgins said that a claimant for compensation who fails to file his claim with the board within 6 months after injury must show good cause for such failure, not merely for the 6-month period, but up to the date the claim is actually filed, citing Holloway v. Texas, etc. (Tex. Com. App.) 40 S. W.(2d) 75, and New Amsterdam Casualty Co. v. Scott (Tex. Civ. App.) 54 S.W.(2d) 175. In this case only 6 months and 5 days elapsed between the date of the injury and the filing of the claim with the board. Judge Higgins, speaking for the court, said: "If it be conceded that some slight reason existed excusing the first few months of delay, nevertheless in January or February, 1930, appellee's wife went to Austin, and he then learned from her no claim had been filed with the board, that it was necessary to do so and should still be filed. But he waited nine months longer before filing same and no excuse for such delay is shown.

Under these authorities we feel constrained to sustain the second and third propositions.

■ Where the court overrules exceptions to the pleadings, and where plaintiff, relying upon such ruling of the court, proceeds to trial upon insufficient pleadings, the usual practice is to remand the cause in order that the pleading may be amended, but in the instant case, even though plaintiff set up all the

facts shown by the testimony, his petition would still be insufficient to entitle him to recover, and we therefore reverse the judgment, and it is here rendered for the appellant.