## TEXAS INDEMNITY INS. CO. v. COOK.
### No. 8090.

Court of Civil Appeals of Texas. Austin.

Oct. 16, 1935.

Rehearing Denied Nov. 6, 1935.

Critz & Woodward, of Coleman, and J. W. Hassell and J. W. Hassell, Jr., both of Dallas, for appellant.

Grisham Bros., of Eastland, for appellee.

McCLENDON, Chief Justice.

This is a workman's compensation case. The suit was brought by Cook (appellee) against the indemnity company (appellant), insurance carrier for Magnolia Petroleum Company (called herein the Magnolia), in the nature of an appeal from an order of the Industrial Accident Board (herein called the board), denying Cook's claim for compensation. Cook recovered in a trial to a jury on special issues; and the indemnity company has appealed.

The accident resulting in the injury involved in the claim occurred September 28, 1928. The claim was filed with the board in February, 1933. The controlling question in the appeal is whether the evidence supports the jury finding that Cook showed good cause for failure to file his claim with the board within the six-month statutory period (R.C.S. art. 8307, § 4a) and up to the actual time of its filing. Holloway v. Texas Indemnity Ins. Co. (Tex. Com.App.) 40 S.W.(2d) 75; Ocean Accident & Guarantee Corporation v. Pruitt (Tex.Com.App.) 58 S.W.(2d) 41; New Amsterdam Casualty Co. v. Scott (Tex.Civ. App.) 54 S.W.(2d) 175; Petroleum Casualty Co. v. Fulton (Tex.Civ.App.) 63 S.W. (2d) 1068. Since we hold that this question must be answered in the negative, discussion of other issues raised in the appeal are pretermitted.

The statement of facts is quite voluminous, and devoted largely to evidence designed to support Cook's contention upon this issue of good cause for the delay. It will only be necessary, however, to a clear presentation of our holding, to give in brief outline what we regard as the controlling facts in the case, stated most strongly in Cook's favor.

At the time of the accident Cook was an employee of the Magnolia engaged in general construction, rig building, and setting gas engines. While so engaged, he fell from a scaffold and received injuries which incapacitated him for some two weeks or more. He quit work and was treated by a physician. In a conversation with a representative of the Magnolia, he was assured

that the Magnolia would look after his claim against the indemnity company, filing for him all necessary papers. He drew compensation checks for two weeks ($34) from the indemnity company, and on October 27, 1928, he executed a full release to the indemnity company. This release was filed with the board, but no action was taken thereon by and no claim filed with the board. He went back to work for the Magnolia some time in October, 1928, and continued in its employ until June, 1931, when he was compelled to quit work altogether on account of having developed, as a result of the accident, an advanced case of pulmonary tuberculosis. It is not necessary to detail the progressive stages in his impaired physical condition, culminating in his final total disability in June, 1931. At first he was able for a time to do heavy manual labor; but from time to time thereafter he was shifted to lighter work. In June, 1931, he talked with Holmes, a representative of the Magnolia in Dallas, about being examined by the indemnity company. Holmes said he saw no reason why this should not be done, and promised to advise him at Kilgore. A few days later he was advised that "the insurance people said they couldn't have anything to do with it." In a later deposition Cook testified upon this point that he was told by a clerk in the Kilgore office of the Magnolia "that Mr. Holmes said the insurance people said it had been so long since the injury they didn't see any reason to reopen the case." From then until February, 1933, his movements and physical and mental condition are given in the evidence with much particularity. Briefly summarized, he went to the State Tubercular Sanatorium at Carlsbad about August, 1931, and remained there until about February, 1932. There he was advised that by taking good care of himself he might hope to be well in about two years. From then on he lived at various places, spending a large portion of the time visiting relatives. He tried on several occasions to do light work, but found invariably that his condition would not admit of it. He experienced much worry and anxiety over his condition.

The grounds relied upon as constituting good cause for failure to investigate or file his claim for the nineteen months between June, 1931, and February, 1933, are in substance these:

Cook thought all along, up to the latter date when he consulted counsel for the first time, that his claim had been filed in September or October, 1928, by the Magnolia; he believed up to that time he would get well and could go back to work, in which event he intended to waive his claim; he was afraid if he filed a claim for additional compensation it would prevent him from getting work. All of these considerations, aggravated by his mental anxiety and worry and his bad state of health, combined to constitute good cause for the delay.

It is not contended that the evidence will support a finding that any one of these grounds was sufficient in itself to constitute good cause, except the first. To quote from Cook's brief: "The plaintiff alleged one legally sufficient ground of good cause for the delay—his belief that the original claim had been duly filed. These other matters he alleged merely because they incidentally affected his course of conduct; they were surrounding circumstances, each of which, according to his allegations, had some bearing on his course of conduct."

■ The test of good cause for delay is that of ordinary prudence, that is such course of conduct as would be pursued by an ordinarily prudent person acting under the same or similar circumstances, in the transaction of his own business. New Amsterdam Casualty Co. v. Chamness (Tex.Civ.App.) 63 S.W.(2d) 1058 (error refused); Maryland Casualty Co. v. Merchant (Tex.Civ.App.) 81 S.W.(2d) 794.

Conceding that good cause was shown for Cook's failure to file his claim up to June, 1931, we think clearly the grounds asserted from then on are wholly insufficient, measured by the above test. Whether we take the version of the report he received from the indemnity company as that it would have nothing to do with his claim, or that it saw no reason to reopen the case because it had been so long since the injury, the result is the same. Each constituted a definite and final declination on the part of appellant to consider or entertain the claim. This was tantamount to a repudiation of the claim, and was so understood by Cook. It was notice brought home to him that whatever might be necessary to protect his rights must be undertaken by himself alone. From the receipt of this notice, he knew that he was dealing at arm's length with the indemnity company; that he was thrown entirely on

his own. From then until he consulted an attorney in February, 1933, he knew that he was totally incapacitated for work in his usual occupation. The only doubt in this regard concerned the duration of the total disability. The most that he was given any ground to hope for was that by taking good care of himself he might get well in two years. The evidence is clear that he knew all along that he had a claim against the indemnity company. Reasonable prudence would require some diligence in ascertaining his rights and seeing that they were properly protected. The statute gives six months within which to file the claim. Here the elapsed time, after repudiation by the indemnity company, was more than three times that period.

■ Good cause for delay from the viewpoint of ordinary prudence is ordinarily a fact question; but where the evidence taken most strongly in favor of the claimant admits of but one reasonable conclusion negativing good cause, the question becomes one of law. An analysis of the evidence at bar brings the case, we believe, clearly within this doctrine.

■ The mere belief that the claim had been filed by the Magnolia, however well founded, could not warrant an indefinite postponement of all effort to ascertain his rights after repudiation by the indemnity company. Nor do we think that the hope that he might get well in two years materially strengthens his excuse for inaction; where, as here, he was well aware that his injuries were not only not trivial, but were serious, resulting in total incapacity, and that hope of recovery was deferred at least two years, with no positive assurance that he would ever get well. The fact that he may have believed that filing a claim for additional compensation might, in case of his ultimate recovery, impair his chances of thereafter obtaining employment, is no excuse for his failure to investigate and ascertain what his rights were. As a motivating cause of his inaction, it amounted to a deliberate decision on his part to assume the risk of losing his rights altogether, for the chance of not impairing his opportunities for employment in case of his recovery at some time in the future. We do not think that his total inaction regarding his rights for over a year and a half under these circumstances admits of a finding that he exercised reasonable prudence.

While we have found no case which embodies the identical fact combination presented here, the conclusions reached in the following cases support our holding: New Amsterdam Casualty Co. v. Keller (Tex.Civ.App.) 62 S.W.(2d) 637 (error dismissed); Petroleum Casualty Co. v. Fulton, supra; Texas Indemnity Ins. Co. v. Williamson (Tex.Civ.App.) 59 S.W.(2d) 232; Durham v. Texas Indemnity Ins. Co. (Tex.Civ.App.) 60 S.W.(2d) 255 (error dismissed); New Amsterdam Casualty Co. v. Chamners, supra; Texas Employers' Ins. Ass'n v. McGehee (Tex.Civ.App.) 75 S.W.(2d) 123 (error dismissed).

The trial court's judgment is reversed and judgment is here rendered for appellant.

Reversed and rendered.