**SCHEUING et al. v. CHALLISS et al.**

No. 9861.

Court of Civil Appeals of Texas. San Antonio.

April 14, 1937.

Rehearing Denied May 12, 1937.

See, also, 104 S.W.(2d) 581.

Leonard Brown and Russell B. Wine, both of San Antonio, for appellants.

Moursund, Moursund & Bergstrom, Frederick C. Felty, and William E. Remy, all of San Antonio, for appellees.

MURRAY, Justice.

This suit was instituted by Carolyn Challiss, a widow, and her children against George W. Scheuing, John H. Scheuing, and J. H. Wigley, seeking to recover damages arising from the death of her husband, James Courtney Challiss, who was killed when he was struck by an ice truck driven by one Crit Lowe.

The trial was before a jury and resulted in a judgment in favor of Carolyn Challiss and her three children in the sum of $10,000, from which judgment George W. Scheuing and John H. Scheuing have prosecuted this appeal, no appeal being taken by J. H. Wigley.

The contention of the appellants is that J. H. Wigley was not their employee, but an independent contractor, and that Lowe was an employeé of Wigley's and not of theirs. No questions are raised as to the negligence of Lowe, nor as to the amount of the recovery; thus we have before us the question of whether, under the facts in this case, Wigley, as a matter of law, was an independent contractor. The jury found, as a matter of fact, that Wigley was an employee, and, of course, if the evidence supports this finding, it would be binding upon this court.

The facts, briefly stated, are as follows: The Scheuings were operating an ice business under the assumed trade-name of Harlandale Ice Manufacturing Company. Wigley was delivering to retail customers ice manufactured by this company, and doing so in a truck owned by the ice company. The company received for the use of the truck, five cents per hundred pounds of ice hauled in the truck. Wigley's compensation was the difference between the wholesale price and the retail price of the ice. In other words, Wigley either paid, or was charged, 20 cents per hundred for all ice which he received from the company. He sold this ice to the customers at the prevailing retail price, which was posted upon a blackboard at the factory, and, after paying for the ice and the use of the truck, retained the balance for his services in peddling the ice. Wigley was given a designated territory within which to solicit customers and deliver ice. The company had at times as many as eighteen persons delivering ice on the same terms as Wigley, with the exception that only three were using trucks belonging to the company. All the others owned their own trucks. All were paid in the same manner, with the exception that those who operated company trucks were required to pay for the use of the trucks at the rate of 5 cents per hundred pounds of ice handled.

The three persons operating the company owned trucks were required to do so-called "hot shotting," or, in other words, make special deliveries of ice in the afternoon. The three operators of the company owned trucks decided among themselves which one on each respective day would remain at the factory to do the "hot shotting" on that particular day. They were paid for "hot shotting" on the same basis as the regular deliveries. Drivers were expected at the factory between 6 and 7 o'clock in the morning to get their ice. They were instructed to drive carefully. On one occasion they were instructed where to get ice when the factory was broken down.

Wigley used certain ice coupon books, which were sold by appellants to Wigley for 2 cents each, to be delivered to customers, upon the flyleaf of which books there was language indicating that Wigley was merely a deliveryman and assuring the customer of protection if he removed to a part of the city served by another wagon.

Wigley was instructed to report promptly in the morning and to cover his territory properly and to do all he could to sell the ice in his territory. J. H. Scheuing testified that if he failed to do this he would be discharged and some one else hired in his place. Scheuing further testified, in substance, that "you have got to own and control the trucks in order to keep some drivers there. The work they do in that delivery system is under my control. Everything out there is under my control." He also testified that the drivers had authority to hire help. The evidence shows that on other occasions Wigley substituted his brother and other relatives for as long as a week at a time, without complaint by Scheuing or his manager. The fact that Crit Lowe was driving the truck on the day of the accident was known to Mr. Boening, the night manager of the business. Several witnesses testified to seeing Crit Lowe driving appellants' ice trucks on different occasions prior to the accident.

John Scheuing testified that he had the right to fire drivers, and Wigley, in his testimony, stated that he was driving for the company.

The drivers of the company trucks kept the trucks at their homes at night, and sometimes used them for their own pleasure, but this was against the instructions of Scheuing. All gasoline and oil used in the company trucks was paid for by the drivers, and the drivers also paid for minor repairs on the trucks. However, major repairs were paid for by the company.

As above stated, the question here presented is whether under all these facts Wigley was an employee of the ice company, or, on the other hand, was an independent contractor. If the evidence is sufficient to raise the question of employee vel non, then the trial judge properly submitted the question to the jury and their finding to the effect that Wigley was an employee, if supported by the evidence, is determinative of the matter, and the company is bound by the finding, but, on the other hand, if the evidence shows that, as a matter of law, Wigley was an independent contractor, then Lowe, being employed by Wigley, would not be the employee of the ice company, and there could be no basis for recovery in this case.

In a very recent decision by the Commission of Appeals, in Smith Bros., Inc., v. O'Bryan, 94 S.W.(2d) 145, 148, opinion written by Judge German, we find the following discussion as to the distinction between an independent contractor and an employer and employee:

"There are many and varying definitions of an employee and of an independent contractor. These definitions themselves, as well as expressions in the opinions wherein they are found, clearly show that it is practically impossible to formulate a fixed rule or formula for determining whether or not a person doing work for another is an employee or an independent contractor. The definitions formulated by the courts in many instances include, or give emphasis to, some evidentiary element which may not in all cases be a controlling factor. This is due to the fact that the presence of certain evidentiary facts is held to be controlling in certain cases, while dominant weight has been given to certain other evidentiary facts in other cases; and definitions have often been formulated in the particular case to more clearly meet the situation presented in that case. In our opinion, the simplest and perhaps the most accurate definition, abstractly speaking, of an independent contractor, is that suggested by the annotator in 'General discussion of the nature of the relationship of employer and independent

contractor' in 19 A.L.R. pp. 226 to 275, and is as follows: 'An independent contractor is a person employed to perform work on the terms that he is to be free from the control of the employer as respects the manner in which the *details* of the work are to be executed.' (Italics ours.)

"Our decisions have for a long time emphasized the necessity of control over the details of the work to be done and the means by which it is done in order to create the relationship of master and servant. For instance, in many cases the courts have adopted the language quoted in Cunningham v. International Railroad Co., 51 Tex. 503, 510, 32 Am.Rep. 632, from Shearman and Redfield on Negligence, to wit: 'He is deemed the "master" who has the supreme choice, control, and direction of the servant, and whose will the servant represents not merely in the ultimate result of the work but in *all its details.*' (Italics ours.)

"In Shannon v. Western Indemnity Co. (Tex.Com.App.) 257 S.W. 522, 523, the following quotation from Street on Personal Injuries was quoted with approval: 'No better test can be applied than to say that the relation of master and servant exists where the master retains or exercises the power of control in directing, not merely the end sought to be accomplished by the employment of another, but as well the *means* and *details of its accomplishment;* "not only what shall be done, but how it shall be done." ' (Italics ours.)"

In Schroeder v. Rainboldt, 97 S.W.(2d) 679, the Commission of Appeals held, in a case very similar to the case at bar, that the truck driver was an employee as a matter of law. In this case it is not necessary to decide whether Wigley or Lowe were employees, as a matter of law, for the question has been answered in the affirmative by the jury, and we need only determine whether or not such findings by the jury are supported by the evidence. We have concluded we would be in conflict with the above case if we should hold otherwise.

Accordingly, our original opinion, published in 98 S.W.(2d) 1000, 1001, and our opinion on rehearing will be withdrawn and retired. The judgment heretofore entered will be set aside, appellees' second motion for a rehearing granted, and the judgment of the trial court affirmed.