**STEINBERG–MAAS CO., Inc., v.**
**NORTHCUTT et al.**

No. 1840.

Court of Civil Appeals of Texas. Eastland.

Oct. 28, 1938.

Rehearing Denied Dec. 2, 1938.

Harry W. Freeman, of Houston, for appellant.

T. L. Price and Joe S. Moss, both of Post, for appellees.

GRISSOM, Justice.

There was a collision in Nolan County between a truck driven by Sam Ballew and an automobile driven by J. I. Northcutt. As a result of the collision, J. I. Northcutt and his granddaughter, Ila Dolores Northcutt, were killed and others were injured.

Three suits were instituted in Nolan County by the surviving and injured occupants of the automobile against The Steinberg-Maas Co., Inc., and others, for damages resulting from the collision, it being alleged by the plaintiffs that Ballew, the driver of the truck, was the agent, servant and employee of The Steinberg-Maas Co., Inc., and was engaged in the course of his employment at the time of his alleged negligent acts causing the injuries and damages alleged. The Steinberg-Maas Co., Inc. filed its pleas of privilege to be sued in the county of its residence, to-wit, Harris County. The pleas of privilege were duly controverted by plaintiffs. Upon a hearing of the pleas of privilege the causes were consolidated and judgment rendered overruling same, from which judgment the defendant The Steinberg-Maas Co., Inc., has appealed.

For sometime prior to the collision, Ballew had been hauling sugar from the warehouse of The Steinberg-Maas Co., Inc., at Houston, to points in Texas. At the time of the collision he was hauling from said company's warehouse ten thousand pounds of sugar to McDonald Brokerage Company at El Paso.

The plaintiffs' answer controverting the said defendant's plea of privilege asserted the right to maintain the suit in Nolan County (a) under subd. 9, of Art. 1995, because a trespass, plaintiffs alleged, was committed by said defendant in Nolan County; (b) because a crime was committed by said defendant in Nolan County, and (c) under subd. 23 of Art. 1995, because the defendant was a private corporation and plaintiffs' cause of action, or a part thereof, arose in Nolan County.

The defendant's contentions were and are (a) that the sole relationship between The Steinberg-Maas Co., Inc., and Ballew, the truck driver, was that of seller and purchaser; (b) that if such were not the relationship, then that Ballew was an independent contractor. The said defendant, appellant here, did not procure findings of fact and conclusions of law. We, therefore, conclude that the trial court found all the facts in favor of the plaintiffs which find support in the testimony, and which are in accord with the judgment rendered overruling said defendant's plea of privilege.

Two witnesses testified with reference to the relationship between Ballew and The Steinberg-Maas Co., Inc., to-wit, Stein-

berg, an officer of the defendant company, and Ballew, the truck driver. The effect of Steinberg's testimony is that said company's sole connection with Ballew was to sell him sugar. The testimony of the witness Ballew was, in substance, that he and Steinberg went through the form of a sale and purchase of sugar for the purpose of avoiding the necessity of obtaining a permit for Ballew to haul property for others, and for the purpose of concealing the defendant's real connection with Ballew. That in the beginning of their dealings, Ballew was required to give Steinberg his check for the purchase price of sugar to be hauled by Ballew, it being understood that Ballew's check was worthless, and could not be paid until after the purchase price of the sugar was collected from The Steinberg-Maas Company's customer by Ballew, and that, in effect, such relationship continued down to the date of the collision. Among other things, Ballew testified:

"A. * * * in order to make it appear as my sugar I had to give him a check for it.

"Q. Did he (Steinberg) tell you where to take the sugar? A. Yes sir.

"Q. On each occasion when you hauled for them did they tell you where to take the sugar to? A. Yes sir.

"Q. Did they tell you how much to carry? A. Yes sir.

"Q. With respect to the route you would travel, who would have the say about that? A. Mr. Steinberg.

"Q. Did he always tell you which way to travel, what road to go over? A. Yes sir.

"Q. Did Mr. Steinberg ever tell you how long you could work for him? A. As long as I done proper and right.

"Q. Did he say whether or not you would be laid off or discharged if you did not follow his instructions? A. He said if I wanted to work for him I should do that.

"Q. Were you given instructions by anyone as to when the loads were to be delivered? A. Yes sir.

"Q. And who did give you those instructions? A. Mr. Steinberg.

"Q. Were you instructed by Mr. Steinberg whether you should haul for anyone else or could? A. No, he would give me instructions what to do; take the load and whether I would have a load to bring back.

"Q. A load of what would you bring back? A. Beans.

"Q. And who would you bring them back for? A. They [Steinberg-Maas] would tell me who to take them to.

* * * * * * *

"A. Mr. Steinberg would wire me lots of times, he would have the loads all ready and where to take them * * *

"Q. Did you have any understanding of any kind with Mr. Steinberg about stopping on your route and receiving telegrams where he could reach you? A. Yes sir.

"Q. On or about the 19th day of July, 1934, [the day before the collision happened early next morning] did Steinberg-Maas Co. or any of their employees or agents assist you in loading your truck with ten thousand pounds of sugar? A. Yes, sir.

"Q. Who supervised the details of that work? A. Mr. Steinberg made out the bill and one of the clerks there had it loaded out.

"Q. Did Mr. Steinberg tell you where to carry that load? A. Yes sir.

"Q. Where did he say to carry it to? A. McDonald Brokerage Company, El Paso.

"Q. Did you know at that time whether McDonald Brokerage Company wanted any sugar? A. No.

"Q. Had you made any arrangements to sell any sugar? A. No.

"Q. Did Mr. Steinberg say anything to you on that occasion about when that load of sugar must be in El Paso? A. Yes sir.

"Q. What did he say? A. The next morning after the wreck happened; two days later after I left Houston—one day and two nights later—one day and two nights later after I loaded out.

"Q. Did he say to you what route you should travel? A. Yes sir.

"Q. What route did he tell you to follow? A. 75 to Dallas and Highway 80 to El Paso.

"Q. Did Mr. Steinberg ever say anything to you about hauling overloads, more than seven thousand pounds? A. When I first started out he would say, 'Well, I want ten thousands pounds taken over here' and I would just take it.

"Q. Did he ever say anything about what to do if the Highway officers caught

you and weighed you? A. He said to just pay off.

"Q. What did he say to you with regard to wiring him if anything should happen on the highway? A. Well, he said if anything went wrong to let him know so they could notify whoever the sugar was going to that it wouldn't be there."

Ballew testified that immediately after the collision he advised Steinberg of the facts by telegram and Steinberg directed him to sell the sugar at first one place and another. Ballew testified he had ten thousand pounds of sugar on the truck at the time of the collision; that he had been driving all night; that the reason he drove all night was because it was necessary to do so in order to get the sugar at its destination by the time Steinberg told him to get it there; that he went to sleep while driving the next morning near Sweetwater; got off his side of the road and ran into the Northcutt car, killing some, and injuring others, of the occupants thereof. That when he finally returned to Houston, Steinberg told him he did not have anything more for him to do.

"Q. In all the dealings you had with The Steinberg-Maas Co. who made the arrangements as to the price you were to get for the sugar, where you were to haul it, what date you were to get it there and what route you were to travel over? A. Mr. Steinberg."

Ballew testified that he would have traveled a route that was not good if Steinberg told him to "because I was working for him." That he (Ballew) could not sell the sugar to just anyone who might want to buy it, even if the price offered had been satisfactory, but that he had to take it to the person to whom Steinberg directed him to deliver it.

"Q. Under the terms and agreements—under the terms of the agreement you had with Mr. Steinberg who had the right to tell you what to haul? A. Steinberg-Maas Company.

"Q. Who had the right to tell you what town to take it to? A. The same company.

"Q. Who had the right to tell you what firm, individual or corporation to deliver it to? A. Steinberg-Maas.

"Q. Who had the right to tell you where to stop enroute for receiving and sending of wires? A. Steinberg would tell me where they expected to wire me.

"Q. Who had the right to tell you how long you would have to drive without stopping? A. They would tell me when they expected at the other end.

"Q. Would they tell you when it had to be there? A. I presume that is when it ought to be there.

"Q. Who had the right to tell you whether you should await instructions at the end of your journey and as to what to haul back, if anything? A. Mr. Steinberg would tell me that I would get instructions the day I would get there.

"Q. Who had the right to tell you how much to get for the stuff you would haul? A. That price would already be determined. Mr. Steinberg would tell me what to get for it wherever I went.

"Q. Under the terms of the agreement you had with Mr. Steinberg who had the right to tell you what to bring back on your return trips? A. They would tell me what to bring back—beans.

"Q. Who had the right to tell you where to go and get the beans? A. They would tell me that and had them—already had the beans sold.

"Q. In all the connections you had with Steinberg-Maas Co. did you ever, yourself, arrange for the price of anything you delivered, going or coming? A. No.

"Q. Who had arranged for that? A. Steinberg-Maas Company.

"Q. What was said between you and Mr. Steinberg as to how long you could work for him? A. Well, nothing particularly said, only as long as I delivered the goods I would naturally have a job.

"Q. You never hauled any merchandise from any other people except from the Steinberg-Maas Company? A. No.

"Q. And hauled no merchandise from people in El Paso or people in other parts of Texas? A. No.

"Q. At no time? A. No.

"Q. And all of that was because you were under obligation— A. Yes sir.

"Q. —to haul their merchandise? A. Yes sir."

The testimony shows that Ballew drove his own truck, paid his own expenses, collected for the sugar when delivered; that Ballew's compensation was the difference in the price at Houston and its destination.

■ The evidence did not conclusively show that the relationship between the

1024

defendant company and Ballew was merely that of seller and buyer. We think the evidence also failed to show, as a matter of law, that Ballew was an independent contractor. Ballew's testimony, if believed, shows that defendant had the right, which it exercised, of control over the details of the work done by Ballew; that Ballew was not independent but subject to defendant's control over the details of his work and the manner in which it was performed. Defendant found the customer and sold him the sugar; it told Ballew how much to haul, the route to travel, where to stop enroute for further instructions, what time to deliver to the customer, who to deliver it to, how much to collect, and then what to bring back, where to get it, how to bring it, where it was to be delivered, etc. We assume that the trial court found that Ballew at the time of the collision was the agent, servant and employee of The Steinberg-Maas Company; that while acting in such capacity, in the scope of his employment by the defendant company, he committed a trespass in Nolan County. We think the evidence supports such findings and, therefore, conclude the court did not err in overruling defendant's plea of privilege. Schroeder v. Rainboldt, 128 Tex. 269, 97 S.W.2d 679; Ochoa v. Winerich Motor Sales Co., 127 Tex. 542, 94 S.W.2d 416; Scheuing v. Challiss, Tex.Civ.App., 104 S.W.2d 1113, writ refused; Taylor, Bastrop & Houston Ry. Co. v. Warner, 88 Tex. 642, 648, 32 S. W. 868.

The judgment is affirmed.