694

## GREEN v. TEXAS EMPLOYERS INS. ASS'N.
### No. 2470.

Court of Civil Appeals of Texas. Waco.

Jan. 28, 1943.

Rehearing Denied Feb. 25, 1943.

Gillen, Francis, Gallagher & Bean, of Dallas, for appellant.

Cramer & Green, of Dallas, for appellee.

RICE, Chief Justice.

This suit was brought by W. H. Green against Texas Employers Insurance Association to set aside a final decision of the Industrial Accident Board, and to recover compensation under the Workmen's Compensation Law of Texas. Vernon's Ann.Civ.St. art. 8306 et seq. At the conclusion of plaintiff's evidence, the trial court, on motion of the defendant, peremptorily instructed the jury to find for the defendant. Judgment was thereupon entered that plaintiff take nothing, from which the latter has appealed.

Plaintiff contends that the trial court was in error in peremptorily instructing the jury to return a verdict for the defendant, because the evidence adduced raised fact issues to be submitted to the jury as to whether or not plaintiff, at the time he received his injury: (1) was an employee of Primrose Petroleum Company, within the meaning of the Workmen's Compensation Act; (2) was engaged in or about the furtherance of the business of his employer; (3) and whether plaintiff's injury had to do with or originated in the work of his employer.

It is the position of the defendant that the undisputed evidence established that plaintiff, at the time he was injured, was acting in the capacity of an independent contractor; that he was not at the time "engaged in or about the furtherance of the affairs or business of" his employer, the Primrose Petroleum Company, nor did his injury "have to do with or originate in the work, business, trade or profession of" his employer, hence the injury sustained by him is not compensable.

Based on the averments of his pleadings, plaintiff introduced evidence tending to establish the following facts, in substance:

Primrose Petroleum Company, a corporation, hereinafter referred to as the Company, was engaged in the business of selling roofing material. Primrose Manufacturing Company was a subsidiary of Primrose Petroleum Company. Plaintiff was employed by the Company as a sales-

man to sell its products on a commission basis, and was by Brin, its vice-president, given a list of prospective customers to call on; he was furnished with a price list and printed order book; he was not employed for any definite period of time and could quit or be discharged at any time. When a sale of roofing products was made to a customer who furnished the labor for its application, plaintiff was instructed to use the printed order form showing the sale direct by the Company to the customer. In case the customer desired the material applied on the roof, that is, a turnkey job, plaintiff was instructed to enter into a contract with the customer in the name of the Royal Roofing Company. This was a trade name the salesman was to use in all contracts where labor was involved, and plaintiff was instructed to sign such contracts "Royal Roofing Company", by him. The materials specified in such contract would be those owned by the Company and it would receive the money for the materials sold.

To be used in connection with the contracts he entered into in the name of the Royal Roofing Company, for the application of the Company's roofing products, plaintiff was furnished with a pad of printed contract forms, to be executed in the name of the Royal Roofing Company by him, each headed by the following printed instructions:

"Instructions to Salesmen

"One of these forms must be filled out and signed by the party you appoint as Special Agent to do roof repair work. A separate form is necessary for each job. No work is to be done until contract is approved by us.

"Royal Roofing Company"

Immediately below the instructions quoted above, the printed contract set forth that the Royal Roofing Company thereby appointed ———, its special agent, to perform the labor to be done or performed on the premises to be therein described. A blank space was left in the contract for the insertion of the special agent's name, and the amount of his compensation, which was to be paid on completion of the work. The contract further provided that the person so appointed was an independent contractor.

In reference to the foregoing contract form, plaintiff testified that Brin, the vice-president of the Company, informed him that the reason he was required to use the printed contract in the name of the Royal Roofing Company was that he, Brin, did not want to get involved with labor; that it would be a violation of the Fair Trade Act if "we didn't use the Royal Roofing Company." He further testified that the Company paid his social security tax to the federal government. Plaintiff also testified that he could not sell on credit; that he was not permitted to close a sale until Brin saw the risk; that he was required to report to the latter "morning, noon and night in order to get the customers he had given me to call on"; that Brin gave him instructions on "how to go out and meet them, and sell them"; that he could not vary the sales price on any goods without said Brin's permission; that he kept his office in the office of the Company with its consent; that Brin required him to telephone in during the day as to what he was doing; that he was required to report to work at 8 A. M. every day by telephone or in person; also at 1 P. M. and was required to call his superior before he would leave in the afternoon in regard to customers whose names were given him to call on; that he could not call on anyone he could make a sale to.

Brin gave plaintiff a card bearing Rosser Coke's name as a prospective purchaser, whereupon plaintiff called upon Mr. Coke a number of times, attempting to sell him the Company's products. He attempted to induce Mr. Coke to sign the order form furnished him by the Company. Mr. Coke was a lawyer and did not sign the order presented by plaintiff but drew up a contract in the form of a letter; the plaintiff submitted this letter to Brin, who read it, said he accepted it and instructed plaintiff to sign it and take it back to Mr. Coke. The letter was introduced in evidence. It was directed to W. H. Green, trading as Royal Roofing Company, for his acceptance and provided that Green, as an independent contractor, in consideration of the sum of $70 would furnish the material and labor for certain repairs on the roof of the Coke Building in Dallas, Texas. The contract further provided that the work was a "turnkey" job, and that Green assumed all responsibility for any injury suffered by his workmen or the public in the performance of the contract. It was further stipulated therein that the Primrose Manufacturing Company would guarantee in writing the material used, and that plaintiff would procure and deliver to Coke an insurance certificate showing

that his workmen and subcontractors were covered by Workmen's Compensation Insurance.

Plaintiff further testified that on reading the foregoing instrument his superior said: "We will have to get someone to do that work"; that he further told plaintiff he was protected by the Workmen's Compensation Law, and requested plaintiff to go to the insurance company and get the insurance that Mr. Coke had asked for. Plaintiff complied with the request by procuring from defendant a certificate that there was in force as of that date a policy of Workmen's Compensation Insurance issued by it wherein the name of the assured was Primrose Petroleum Company and/or W. H. Green trading as Royal Roofing Company, covering operations performed by W. H. Green trading as Royal Roofing Company on the Coke Building. The parties to this cause stipulated in writing that the defendant carried a policy of insurance on the Primrose Petroleum Company.

Thereupon, and using the printed form furnished by the Company, plaintiff, in the name of the Royal Roofing Company, entered into a contract with C. A. Bryant, whereby the latter, in consideration of $10 to be paid on completion of the work, agreed as an independent contractor to perform the labor under the contract with Coke.

Plaintiff testified that his superior, Brin, had met Bryant on August 15th, and that on August 18th he had a conversation with Mr. Brin, in Bryant's presence, wherein Brin told plaintiff that Bryant was going to do the work at the Coke Building, and instructed plaintiff to see that the material was delivered to the right destination, that "I want to do a perfect job on this because I am giving a 10 years' guarantee on it."

Plaintiff testified that the destination of the material was the second or third or fourth floor of the Coke Building, he did not remember which, but that the Company had delivered it on the first floor; that Bryant said he was not supposed to carry it up, and plaintiff thereupon proceeded to carry a five-gallon pail of material weighing sixty pounds up the stairway; he reached the second story and was starting up to the third story when his foot slipped and he fell and received the injuries resulting in the incapacity to labor for which he sought compensation in this suit.

C. A. Bryant, a witness for plaintiff, testified substantially as follows: That he met plaintiff a day or two prior to August 15th; that he had been recommended to plaintiff, who called him at his home and said he intended doing some work on the Coke Building; that following his meeting with plaintiff they went to the Company's office and he met Mr. Brin, the Company's vice-president. When he furnished credentials to satisfy Mr. Brin relative to performing the labor, Brin informed plaintiff to be sure that the materials were delivered to that job so that Bryant could do the work, and if there was any material left over to take it back to the Primrose Petroleum Company plant. The driver of the Company's truck set the material in the lobby of the Coke Building where plaintiff checked it. That he was supposed to do the work on the second and third floors; that the next morning he came to start the work and Green picked up a five-gallon bucket and started up the stairway; he slipped on the stairs to the third floor and fell to his knees; that Green clasped both hands to his stomach, his face was white, and he seemed to be in pain. He further testified that Mr. Brin had instructed plaintiff to pay him as soon as the money was collected from the job; that plaintiff paid him twenty dollars in cash in the office of Mr. Brin but he did not recall whether Brin was present or not.

Plaintiff testified that on the completion of the contract Mr. Coke paid the contract price of $70 by check payable to the Royal Roofing Company, which he was authorized to cash and did cash; that he delivered $50 to the Company and on being ordered to do so paid Bryant $20 instead of the $10 stipulated in the contract because there was a misunderstanding, and that he received $15 in satisfaction of his commission for making the sale.

We are of the opinion that the evidence adduced, and above summarized, was sufficient to raise each of the ultimate and controlling issues of fact tendered by plaintiff's pleadings and on which his cause of action was predicated, and hence that these issues should have been submitted to the jury, with appropriate instructions, for its determination. Art. 8309, § 1, Revised Civil Statutes 1925; Lumberman's

Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S.W. 72, 28 A.L.R. 1402; Texas Employers Ins. Ass'n v. McGehee, Tex.Civ. App., 75 S.W.2d 123; Gulf Refining Co. v. Rogers, Tex.Civ.App., 57 S.W.2d 183; Steinberg-Maas Co. v. Northcutt, Tex.Civ. App., 121 S.W.2d 1021; Southern Underwriters v. Waddell, Tex.Civ.App., 144 S. W.2d 637.

The judgment of the trial court is reversed and this cause is remanded.