## ASSOCIATED EMPLOYERS' RECIPROCAL v. GRIFFITH et al. (No. 1626.)

(Court of Civil Appeals of Texas. El Paso, June 19, 1924. Rehearing Denied July 3, 1924.)

**1. Master and servant ⚙=371—Compensation claimant must show employment and injuries in course of employment.**

In order for servant to recover under Employers' Liability Act (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1 et seq.) it is incumbent on him to show that he was an employee of defendant and that his injury occurred in the course of his employment by such defendant.

**2. Master and servant ⚙=405(4)—Evidence held to show compensation claimant was not working for defendant.**

Evidence *held* to show that compensation claimant was doing work which third party individually had contracted to perform and with which defendant was not shown to have had any connection whatever.

Appeal from District Court, Taylor County; W. R. Ely, Judge.

Proceeding by Herlie Griffith and his attorney, under the Employers' Liability Act, to recover compensation for injuries, against the Dorsey Lumber & Rig Company, employer, and the Associated Employers' Reciprocal, insurer. Judgment for claimants, and insurer appeals. Reversed and remanded.

Levy & Evans, of Fort Worth, for appellant.

E. E. Clack and M. M. Parks, both of Dallas, for appellees.

HIGGINS, J. On December 11, 1922, the Industrial Accident Board, in the matter of Herlie Griffith, employee, against Dorsey Lumber & Rig Company, employer, hereinafter designated Dorsey Company, and Associated Employers' Reciprocal, insurer, made an order finding that on July 21, 1922, said employer was a subscriber to the Employers' Liability Act (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1 et seq.), and carried a policy with said insurer; that Griffith was an employee of said company on said date and covered by such policy; that on said date he was injured in the course of his employment and entitled to compensation at the maximum rate of $15 per week for total incapacity and entered its decree in accordance with such findings, less a credit of payments theretofore made. Griffith's application for a lump sum settlement was denied. From this order Griffith appealed and joined by his attorney filed this suit seeking recovery of a lump sum settlement. The insurer answered by general and special exceptions and general denial.

The case was submitted upon special issues. Answers to some of the issues were conditionally required. The issues answered, together with the answers, are as follows:

"Question No. 1: Was Herlie Griffith ever employed by the Dorsey Lumber & Rig Company? Answer yes or no.
"Answer: Yes."

"Question No. 2. If you have answered the foregoing question, issue No. 1, in the affirmative, then you will answer this question: Did Herlie Griffith continue to work under same employment down to and inclusive of date of injury or accident, July 22, 1922? Answer he did or he did not.
"Answer: He did."

"Question No. 5. Was Herlie Griffith totally incapaciated for work on July 22, 1922? Answer yes or no.
"Answer: Yes."

"Question No. 6. If you have answered 'Yes' to the last foregoing question or issue No. 5, then you will answer this question: Was such total incapacity, if any, permanent? Answer yes or no.
"Answer: Yes."

"Question No. 8. Is this a case where, in your judgment, manifest hardship and injustice would result to the plaintiff, Herlie Griffith, if the defendant should fail to redeem its liability, if any, by payment of a lump sum instead of weekly payments of $15 per week? Answer yes or no.

"Answer: Yes."

Defendants requested issue No. 2:

"In whose employ was the plaintiff, Herlie Griffith, while working in the erection of the rig at Witte well No. 2 on July 22, 1922, at the time he sustained the accident in question?
"Answer: Dorsey Lumber & Rig Company."

Upon these findings judgment was rendered in favor of Griffith and his attorney E. E. Clark for the amount due upon lump sum settlement as for total permanent incapacity at the maximum compensation, less credits of amounts theretofore paid and the discount allowed by law, the net amount of the judgment being $4,868, two-thirds of which was ordered paid to Griffith and one-third to his attorney.

The assignments and propositions are so numerous that they will not be discussed in detail, and under the view we have of the case there is no occasion to do so.

The Dorsey Company was a corporation. Tom Gleason was a stockholder in the company and its general manager, secretary, and treasurer. For some time prior to March 1, 1922, the Dorsey Company had been engaged in the lumber and rig-building business at Breckenridge, Tex., and surrounding territory.

⚙=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Griffith testified:

"I was in the employ of the Dorsey Lumber & Rig Company, at the time this accident happened to me. And I had been employed by them for two months.

"I went to this company for employment and asked for a job as rig builder and I met a fellow by the name of Dresbak, and he referred me to a fellow by the name of Shorty, and he said, 'Are you a rig builder;' and I said 'Yes;' and he said "Come back after dinner, and I'll put you on the crew." A fellow named Shorty said that.

"At the time I was employed I was in the office of the Dorsey Rig-Building Company, Lumber & Rig-Building Company. I was in the front part—the main office. Shorty, at that time, was in the next room. I could not tell you what he was doing in there. Shorty was a kind of boss and saw that the men got out to work on certain locations, and that was his duty. I could not say that he was described as anything, only a foreman.

"The Dorsey Lumber & Rig Company had about five crews of employees at that time. There are four or five men in a crew. They never have the same number of men in a crew. Sometimes they are unable to pick up a man to make the fifth man, and then they send out the four. I have been out on jobs where there would be only two 'or three.

"These men were all doing the same kind of work I was doing. I worked with them. I did not work with one crew all the time. I worked with either one or the other of these crews that were working for the Dorsey Lumber & Rig Company. Sometimes we would finish up a job, and maybe they wanted a rig or two torn down, and they would assign you as part of a crew to go out and tear that rig down and we would go and do that.

"After I went into the employment of the Dorsey Lumber & Rig Company my employment was not changed at any time with my knowledge and by my consent. Not to my knowledge. If my employment was changed I had no notice or knowledge that it was changed. I did not make any agreement that it should be changed."

On July 22, 1922, Griffith was injured while working on a rig being built for E. A. Landreth at what is called Witte well No. 2. At that time the Dorsey Company carried an employers' liability policy issued by appellant. On August 8, 1922, a rider was attached to the policy so as to protect "Dorsey Lumber & Rig Company and/or Thomas Gleason."

Miss Ellen Blanchard testified:

"I am a .bookkeeper and office manager for Tom Gleason, rig contractor. I am in the employ of Tom Gleason, rig contractor; I have been in his employ since January 1, 1923.

"I have been a bookkeeper and accountant for about 15 years. Prior to the time I was employed by Tom Gleason I was employed by Dorsey Lumber & Rig Company at Breckenridge. I entered the employ of the Dorsey Lumber & Rig Company about March, 1920. I left the employ of Dorsey Lumber & Rig Company on December 31, 1922. I immediately went into the employment of Tom Gleason, rig contractor, when I left the employ of the Dorsey Company on that date. I was employed by the Dorsey Lumber & Rig Company as bookkeeper and stenographer. The Dorsey Lumber & Rig Company was a corporation.

"As to who kept the pay roll accounts of the Dorsey Lumber & Rig Company in July, 1922 —we had no pay roll in July, 1922. We had no pay roll account in July, 1922. We had a salary account, and during that time I was the only employee. I was the only employee of the Dorsey Lumber & Rig Company in July, 1922.

"When I entered the employ of the Dorsey Lumber & Rig Company they were doing a rig-building and general lumber business. It would take contracts from people who wanted to erect rigs to drill oil wells and would build derricks and furnish labor and material. That included the lumber, the drayage from the yard to location, and the labor to build the rig. And it includes all the material. They continued that work from the time I entered the company until March, 1922—until about the 1st of March, 1922. After March 1, 1922, they disposed of the remaining stock they had. I mean the stock of material they had on hand to build rigs. It was all sold to Tom Gleason, Rig Contractor.

"The Dorsey Lumber & Rig Company on or about March 1, 1922, simply discontinued taking contracts and disposed of the material they had. The corporation after that was dissolved, in December, 1922. On March 1, 1922, the Dorsey Lumber & Rig Company began to liquidate its accounts with a view of final dissolution of the corporation. They discontinued taking contracts March 1, 1922, and with the idea of liquidating the business. It took until about December, 1922, and some time in December, 1922, the corporation was dissolved. During the period beginning March 1, 1922, and ending whatever date it was in December, 1922, the Dorsey Lumber & Rig Company was liquidating the business during that time. They were not taking contracts to build rigs.

"Tom Gleason was secretary and treasurer and general manager of the Dorsey Lumber & Rig Company. On or about March 1, 1922, when the Dorsey Lumber & Rig Company discontinued the rig-building business, Tom Gleason continued with his own rig-building business. He had been in the rig-building business before that time, from January 1, 1922. I mean that in connection with his duties with the Dorsey Lumber & Rig Company he had been a contractor in the rig-building business as an individual rig-building business from that time, but not in Breckenridge. He had been such in Grand City and Oil City, Tex., and other fields. In March, after March 1, 1922, Tom Gleason began to take contracts for the same kind of work, erecting rigs, in and about Breckenridge. He took those contracts for Tom Gleason, rig-building contractor—for himself.

"I was bookkeeper for the Dorsey Lumber & Rig Company from the 1st of March, 1922, until that corporation dissolved. During the same period of time I assisted with Tom Gleason's work. I did not do it all at that time, but assisted with his bookkeeping and managed the office. We had a bookkeeper by the name of Mr. Dresbak beginning March 1, 1922. He did the greater part of the bookkeeping. Ellis Dresbak was his name. Mr. Dresbak was in the employ of Tom Gleason, rig contractor. He

kept the books and did general office work for Mr. Gleason. Those books were kept under my supervision. I supervised the keeping of those records. I did not check them all, not everything. Mr. Dresbak kept the pay roll accounts of Tom Gleason during July, 1922, under my supervision. I know that these pay roll accounts were correctly kept. These (indicating) are the books I brought. I have with me the pay roll records of Thomas Gleason covering 'the month of July, 1922. I can find that in just a minute. In July, 1922, Mr. Gleason always paid his employees by check: During the month of July they were paid on the 15th, the pay roll was closed the 15th and the 31st of the month. Prior to June we paid on the weekly plan, and on June the 15th I believe it was that we changed to the twice a month plan.

"I have the pay roll records for Thomas Gleason for the months of June, July, and August, 1922. This check No. 2800—I wrote that EDB in the upper right-hand corner of that. Those are my initials. This is a check for Herlie Griffith. The body of this check is in Ellis Dresbak's handwriting. This check No. 2951 which has my initials on it—my initials were written there the same time that my deposition was taken. And the same as the check No. 3049. And the same as to 3186. Also No. 3406 is similarly identified. I wrote that on there. No. 3603 has the same mark of identification on the right-hand corner. I wrote that there when my deposition was taken.

"According to the way I kept my books and paid my men about the 1st of June or say the 2d of June, if I gave a man a check dated June 2, 1922, for $54 and the check showed on it 4½ days at $12 per day in full of labor and rig building, week ending June 1st, I can tell from my books if that man worked 4½ days during that week. I have now turned to my pay roll record, and Herlie Griffith appears to have worked 4½ days during the week ending June 1st. I have turned to my records and he shows by them to have worked during the week ending June the 8th 6 days. · He received a check for that work. If he received a check dated June 10, 1922, for 6 days at $12 per day that would be payment for the week ending June 8th. I can tell from my pay roll records whether or not Herlie Griffith worked for Tom Gleason 5 days at $12 per day for the week ending June 15, 1922. He worked 5 days for the week ending June 15, 1922. From June 15 to July 1, 1922, he worked 9 days.

"About that time and including that check there was given in payment for that man's salary $14 per day. At that time we changed the pay roll. We raised the rates on some people, but not on all. From July 1 to July 15, 1922, Herlie Griffith worked 10 days at $14 per day. From July 15, 1922, to August 1, 1922, Herlie Griffith worked 5 days at $14 per day. In all my answers I have been talking about Herlie Griffith, the plaintiff. I know Mr. Griffith.

"When checks were issued to employees of Thomas Gleason in payment of labor, before they were delivered to the employees, in nearly every instance, I checked them to see if they were correct or if any errors were made. The checks had on the front of them for what they were given. It was supposed to be on every check. I inspected the checks before they were given to the employees to see that they correctly showed this information. I would think that I inspected these checks before they were delivered to Herlie Griffith to see about this. These checks were in fact given for the purpose for which they purport to have been given on the face of the check.

"The record, pay roll record, of Tom Gleason, rig contractor, here shows that Herlie Griffith worked as follows during the last half of July as follows: 17th, ½ day; 18th, one day; 19th, ½ day; 20th, one day; 21st, one day; 22d, one day. I believe that the 22d was the day that Mr. Griffith was injured. His pay for the week on the 22d was included in the check for the week which was paid to him by Tom Gleason, rig contractor.

"The rig he was working on was being built for—it was the Witte No. 2 for E. A. Landreth & Co., and was being built by Tom Gleason, rig contractor.

"When Tom Gleason began work in and around Breckenridge as rig contractor, his place of business or office was in Breckenridge at the corner of Court and Hullen streets. That was the office of Dorsey Lumber & Rig Company. There was a sign on that building which said 'Dorsey Lumber & Rig Company, Rig Contractors. * * *'

"I state to this jury that Herlie Griffith was not in the employ of Dorsey Lumber & Rig Company any time during the year 1922. He was not. I know that he was not. * * *

"I knew Herlie Griffith, the plaintiff, casually, prior to the time of this accident. I had seen him in the office of Tom Gleason, rig contractor. That was in the same office as that of Dorsey Lumber & Rig Company. It was a joint office for the two businesses."

Copies of six pay checks issued to plaintiff were offered in evidence as follows: June 2, 1922, for $54; June 10, 1922, for $72; June 17, 1922, for $60; July 1, 1922, for $126; July 17, 1922, for $140; August 2, 1922, for $70. All of said checks were payable to Griffith and indorsed by him. They were all upon the same form and drawn by Thos. Gleason. The following is a copy of the one dated June 2:

"Tom Gleason, Rig Contractor.
"Lumber, Timber and Rig Irons.
"No. 2800.
                "Breckenridge, Texas, June 2, 1922.
"Pay to the order of H. Griffith $54.00, fifty-four dollars. To First National Bank, Breckenridge, Texas. Tom Gleason, Rig Contractor, by Thos. Gleason.
"The payee by indorsement of this check acknowledges payment as below. Void if altered. If not correct, return. 4½ days at $12.00, $54.00.
"In full for labor and rig-building, week ending 6/1."
And indorsed on the back as follows: "H. Griffith. Charles Bender."

Thos. Gleason testified by desposition as follows:

"Herlie Griffith was in the employment of the Dorsey Lumber & Rig Company on and prior to the 21st day of July, 1922. He was covered by that policy issued to both of us.

The premiums had been paid by the Dorsey Lumber & Rig Company on the policy of compensation insurance issued by the Associated Employers' Reciprocal to the Dorsey Lumber & Rig Company, and it was in force on the 21st day of July, 1922. It had not been canceled. * * *

"The Dorsey Lumber & Rig Building Company is engaged in the lumber and rig-building business. Herlie Griffith was rig building for the said Dorsey Lumber & Rig Company on and prior to the 21st day of July, 1922. * * *

"It is a fact that the rig where Mr. Griffith was working on July 21, 1922, was being erected for E. A. Landreth on premises in Shackelford county, Tex. It is a fact that E. A. Landreth contracted with me to erect the rig in question. It is a fact that the Dorsey Lumber & Rig Company had nothing to do with the contract for the erection of the rig in question, but that I myself, as an individual, made the contract with Landreth, and I myself, as an individual, was erecting the rig in question.

"It is a fact that I, as an individual, was engaged in the business of building rigs in the vicinity of Breckenridge, Tex., on and prior to July 21, 1922. I engaged in the business at Breckenridge ,and in that civinity of a rig-building contractor, as an individual about March 1, 1922.

"It is not a fact that at no time during the month of July, 1922, was the Dorsey Lumber & Rig Company engaged in building rigs for anybody. They were.

"It is true that some time prior to July, 1922, the Dorsey Lumber & Rig Company began liq-.uidating its affairs and business with the exception and for the purpose of winding up the business of said corporation, but we did not know at that time whether we would carry on the business under the name of Dorsey Lumber & Rig Company or would dissolve it. The Dorsey Lumber & Rig Company did make such contracts, for the erection of rigs, after it began to liquidate. It is not a fact that at the time I began contracting as an individual rig-building contractor the Dorsey Lumber & Rig Company discontinued taking contracts for the building of rigs.

"It is a fact that on July 21, 1922, Herlie Griffith the plaintiff in this case, was in the employ of myself, Tom Gleason, and also in the employ of Dorsey Lumber & Rig Company. Herlie Griffith the plaintiff in this case had been in my employ, and also the Dorsey Lumber & Rig Company, for about two months.

"We are paying by check on the 1st and 15th of every month. As to when we made the last payment to Griffith the plaintiff in this case for services rendered by him as our employee up to and including July 21, 1922, on August 2, 1922, we paid him $70 for five days' work in full to 8/1/1922. * * *

"I paid Herlie Griffith for his services while in my employ six times: June 1, 1922, $54; June 8. 1922, $72; June 15, 1922, $60; July 1, 1922, $126; July 15, 1922, $140; and August 1, 1922, $70. These payments were made by check. * * *

"As to when the Dorsey Lumber & Rig Company began liquidating its affairs and discontinued making contracts with any one for the erection of rigs, there was no definite time for beginning, but so far as I remember no contracts were taken for building rigs after March 1, 1922, but the Dorsey Lumber & Rig Company was doing other work. I began contracting as an individual rig-building contractor at Breckenridge and in that vicinity about March 1, 1922.

"The foreman who had charge of the work of erecting the rig for E. A. Landreth on July 21, 1922, where Mr. Griffith claims to have been injured, was Steven Carpentier. He, Steve Carpentier, who had direct charge of the erection of the rig mentioned just above, was in my employ. On July 21, 1922, I had a foreman in my employ. His name was Steve Carpentier. Herlie Griffith, the plaintiff in this case, had a foreman over him in the work which he was doing on July 21, 1922. The foreman was Steve Carpentier, and he was in my employ.

"As to whether it was not a fact that I, individually, paid Herlie Griffith, the plaintiff in this case, my own money for services rendered by him as my employee during the month of July, 1922, up to and including the 21st day of that month—yes. We also paid him for the 22d.

"As to whether or not it is a fact that the Dorsey Lumber & Rig Company never paid Herlie Griffith the plaintiff in this case any sum of money whatever for services rendered by him during the month of July, 1922—yes."

W. M. Smith, bookkeeper for E. A. Landreth Company, testified that the contract for the erection of the rig on Witte well No. 2 was with Tom Gleason, individually, that the bills for such erection were presented by and paid to Gleason; Smith also testified:

"All our transactions for the building of rigs has been with Thomas Gleason personally. He acted for the Dorsey Lumber & Rig Company until the early part of 1922; I cannot give the exact time, but since then Thomas Gleason has acted for himself individually and since that time E. A. Landreth Company has paid Thomas Gleason individually for all such work. * * *

"I know the contract for the erection of rig for Witte well No. 2 was made with Thomas Gleason individually and he billed for the work individually and the check for same was issued to him individually; that is as far as I can say. * * *"

Attached to the deposition of Smith were bills rendered by Gleason and the canceled checks in his favor.

Thos. M. Russell testified that prior to March 1, 1922, he was an employee of the Dorsey Company and since that date had been employed by Gleason.

J. A. Henley testified that he became an employee of Gleason on May 1, 1922, as fieldman; also:

"I recall the erection of a rig at a well called Witte well No. 2 in Shackelford county in 1922. I closed the contract for it. That rig was erected for the Landreth Company. Tom Gleason, rig contractor, was the contractor who built that rig. Steve Carpentier was one of the men who worked on the rig; he was the foreman. Hunter Sly and a man by the name of Coons and Herlie Griffith and John Drake also worked on that rig.

"I always sent the men out on the jobs. I

sent these men out to work on that rig. I directed Herlie Griffith to go out and work on that rig.

"I was not at any time in the employ of the Dorsey Lumber & Rig Company."

Miss Daisy Gutzwiller, an employee of the agents of appellant, testified:

"That the accident of Herlie Griffith was reported as being an accident to an employee of Dorsey Lumber & Rig Company, and relying on such report the Associated Employers' Reciprocal paid compensation insurance to Herlie Griffith until it was learned that he was in the employ of Tom Gleason and not Dorsey Lumber & Rig Company."

It was also shown by Miss Gutzwiller that appellant had issued no policy covering the employees of Gleason until the above-mentioned rider was attached on August 8, 1922, to the Dorsey Company policy. She also testified that four claims for compensation were paid for accidents occurring in June and July, 1922, to persons reported to the appellant as employees of the Dorsey Company.

In this connection Miss Blanchard testified that these injured men were reported to the insurer as employees of the Dorsey Company when they were in fact employees of Gleason.

The premiums paid appellant were based upon the pay rolls of employees, and in making reports to appellant Miss Blanchard reported as employees of the Dorsey Company the employees of Gleason.

The Dorsey Company was dissolved in December, 1922.

There is an agreement between the parties that the accident happened on July 22, 1922, and that where the date appears as July 21, 1922, such dates should show as July 22, 1922.

[1] In order for the appellee to recover it was incumbent upon him to show that he was an employee of the Dorsey Company and that his injury occurred in the course of his employment by that company. Lumberman's, etc., v. Behnken, 112 Tex. 103, 246 S. W. 72, 28 A. L. R. 1402; Sichterman v. Kent Storage Co., 217 Mich. 364, 186 N. W. 498, 20 A. L. R. 309.

[2] As we view the evidence it is wholly insufficient to meet the prescribed test. It is true appellee and Gleason testified in general terms that at the time of the injury appellee was in the employ of the Dorsey Company, but when their whole testimony is considered it is apparent that this was an erroneous conclusion. The concrete facts to which they and all of the other witnesses testify lead to the inevitable conclusion that at the time of the injury appellee was doing work which Gleason individually had contracted to perform and with which the Dorsey Company is not shown to have had any connection whatever. It may be that appel-lee believed he was working for the Dorsey Company at the time of his injury, and believed that his injury was sustained in the course of that employment, but such mistaken conclusion does not impose liability upon appellant. For the reason indicated the judgment must be reversed. The other assignments have been considered, but none of them are regarded as presenting reversible error and are overruled.

Reversed and remanded.