## TEXAS EMPLOYERS INS. ASS'N v. MITCHELL.

### No. 5133.

Court of Civil Appeals of Texas. Amarillo.

March 18, 1940.

On Rehearing June 10, 1940.

Rehearing Denied July 1, 1940.

T. R. Boone, of Wichita Falls, for appellant.

Johnson & Oliphant, of Dallas, for appellee.

JACKSON, Chief Justice.

This suit was instituted by M. Mitchell, the appellee, on November 8, 1938, in the District Court of King County against the Texas Employers' Insurance Association, the appellant, to set aside the decision of the Industrial Accident Board refusing his claim for compensation and to recover compensation for accidental injuries he claims to have sustained on December 11, 1932, while in the employ of the Bull Stewart Equipment Company, which he says carried insurance with appellant for the protection of its employees.

He alleged that he was totally and permanently disabled or in the alternative partially disabled by an injury he received on December 11, 1932; that he filed his claim within six months after he was injured but if he did not good cause existed for not doing so which continued until his claim was filed. The good cause asserted is that he believed at the time of the injury he would soon recover therefrom, that his disability would neither be serious nor permanent and that after he learned he had been seriously and permanently disabled he thought such disability was the result of disease until just prior to filing his claim.

By agreement of the parties the cause was transferred from the District Court of King County on March 27, 1939, to the District Court of Cottle County.

On April 15, 1939, the appellant answered by general demurrer, general denial, alleged that if appellant is suffering any incapacity it is due to disease and infections for which it is not liable and denied under oath that appellee gave notice to his employer, Bull Stewart Equipment Company, within thirty days from the time he received his injury or filed a claim for compensation with the Industrial Accident Board within six months from the date of the accidental injury he alleges.

The trial was begun on April 17, 1939, and on the next day the appellee, to have the pleading correspond to the evidence, with leave of the court filed a trial amendment in which he pleaded that he was an employee of the Bull Stewart Equipment Company and an employee of the Safety Convoy Company, both engaged in the same business of transporting automobiles by trucks; that a majority of the stock in each company was owned by the same stockholders; that both had offices in the same building and had the same address; that the insurance policy issued by appellant covered the employees of both of said companies and the trial amendment was intended to be considered with and in addition to the allegations in the original petition.

The appellants filed numerous exceptions to the trial amendment the effect of which was that the two alleged employers were separate and distinct corporations under the record; that the claim filed by appellee with the Industrial Accident Board asserted that he was in the employ of the Bull Stewart Equipment Company when injured but was, in fact, under the record, in the employ of the Safety Convoy Company; that the Board had never considered appellee's claim for compensation with the information as to whom the true employer was; that the true employer had never been notified that a claim had been filed and the district court had no jurisdiction to pass upon the award or the case until the question of appellee's claim was determined by the board after having been furnished with the name of the true employer. The appellant denied under oath that the Bull Stewart Equipment Company and the Safety Convoy Company were one and the same party or that they were engaged in the same business. These objections to the trial amendment were overruled, to which action of the court appellant excepted

628

In response to special issues submitted the jury found, in effect, that appellee believed that the disability he suffered was the result of disease not caused by the injury until immediately before he filed his claim for compensation; that in so believing he acted as a person of ordinary care and prudence would have acted under similar circumstances; that he sustained personal injuries to his back in the lumbar region about December 11, 1932; that such injury did not result in total incapacity but that he did sustain partial incapacity and that such is permanent; that the appellee has or will sustain partial permanent incapacity to the extent of 50%; that it would be just and fair to both parties to fix the average weekly wage of appellee from January 11, 1931, to January 11, 1932, at $25 per week; that he was entitled to a lump sum settlement; that his incapacity was not the sole result of disease.

Upon this verdict the court rendered judgment in favor of appellee setting aside the award of the Industrial Accident Board and decreed that he was entitled to recover the sum of $7.50 per week for 300 weeks beginning December 11, 1932, from which judgment this appeal is prosecuted.

■ The appellant by proper assignments contends that appellee having claimed before the Industrial Accident Board that his employer was "Bull Stewart Equipment Company" and having obtained the ruling of the Board thereon, he was not entitled to recover in court upon the theory that he was in the employment of "Safety Convoy Company" as this issue of the "course of employment with the Safety Convoy Company" was never passed upon by the Industrial Accident Board and therefore the District Court was without jurisdiction of the suit.

The record shows that appellee stated in the claim filed with the Industrial Accident Board that he received his injuries "while in the course of my employment for Bull Stewart Equipment Company of Dallas;" that no claim was ever filed with the Board stating that appellee was employed by the Safety Convoy Company; that the name of the true employer was disclosed on the trial of the case in District Court and appellee by trial amendment for the first time asserted he was in the employment of both companies.

In support of the jurisdictional question presented appellant relies on the holdings in Associated Employers' Reciprocal v. Griffith et al., Tex.Civ.App., 264 S.W. 346; Griffith v. Associated Employers' Reciprocal et al., Tex.Civ.App., 10 S.W.2d 129; White v. United States Fidelity & Guaranty Co., Tex.Civ.App., 45 S.W.2d 756; Traders & General Ins. Co. v. Garry, Tex.Civ.App., 118 S.W.2d 340. Each of these cases except the Garry case, supra, was disposed of in the appellate court before article 8307b, Vernon's Ann.Civ.St., became effective. The record in the Garry case in which writ of error was granted fails to disclose when the case was tried in the district court but since article 8307b is not discussed or mentioned in the opinion we shall assume that the trial was had prior to the effective date of said article.

In Traders & General Ins. Co. v. Belcher, Tex.Civ.App., 126 S.W.2d 35, 37, writ denied, it is held: "Article 8307b, Acts 1937, c. 261, p. 535, relating to presumptions on appeal from the Industrial Accident Board are not applicable here since said Act became the law after the appeal from the board and trial of this cause."

Article 8307b is as follows:

"In the trial of any case appealed to the court from the board the following, if plead, shall be presumed to be true as plead and have been done and filed in legal time and manner, unless denied by verified pleadings:

"(1) Notice of injury;

"(2) Claim for compensation;

"(3) Award of the board;

"(4) Notice of intention not to abide by the award of the board;

"(5) Filing of suit to set aside the award.

"Such denial may be made in original or amended pleadings; but if in amended pleadings such must be filed not less than seven days before the case proceeds to trial. In case of such denial the things so denied shall not be presumed to be true, and if essential to the case of the party alleging them must be proved."

This statute became effective ninety days after May 22, 1937, and was in force at the time of the trial of the instant case. The Safety Convoy Company was notified of the injury, but appellant denied under oath that appellee gave notice to the Bull Stewart Equipment Company within thirty days from the time he was injured or filed a claim for compensation with the Industrial Accident Board within six months from the date of the alleged injury, denied

that the Bull Stewart Equipment Company and the Safety Convoy Company were one and the same party or that they were engaged in the same business, but did not deny under oath that any claim for compensation was filed.

The assignment challenging the jurisdiction of the court is overruled.

The appellant assails as error the action of the court in refusing to direct a verdict in its behalf inasmuch as the testimony is insufficient to support the finding of the jury that good cause existed for the failure of appellee to file his claim within six months and that in so failing he acted as a person of ordinary care and prudence under the same or similar circumstances.

The appellee claimed that he received his injury on December 11, 1932. The record shows that he filed his claim with the Industrial Accident Board on July 28, 1938, hence there elapsed from the time of the injury until he filed his claim five years, seven months and seventeen days.

The appellee testified in substance that he and two other men, on December 11, 1932, were on the road from Dallas to Lubbock each driving a truck. The roads were slippery, and to keep one of the trucks from slipping into the ditch by the roadside he was pushing on the side of the truck with his shoulder, but the truck slipped and did something to his back which caused him to suffer immediate pain. He drove the truck on to Lubbock and also on the return trip to Dallas, and when he arrived his back was paining him. He went home; his wife rubbed it with liniment and put hot cloths on it; he went to bed where he remained for a couple of days then reported to the Safety Convoy Company and was sent by it to Dr. Riddler, the appellant's physician, who examined him and had an X-ray picture made and advised him there was nothing wrong with his back. On account of this injury he did not work for some two to four weeks then began again; made two or three trips with the truck but had trouble with his back, then quit or was discharged because of his inability to work and went into the grocery business, which he is still conducting with the assistance of his wife. He also had a filling station a while and for some six months previous to the trial, in addition to the grocery store, operated a skating rink. About six months after he was injured he realized his back was in a bad condition. Every time he lifted anything heavy he had trouble and had never since been able to do any manual labor that required stooping or lifting, but did not connect his trouble with his injury but thought probably it was rheumatism or something of that kind although he had never been troubled with rheumatism prior to his injury. He first learned that his disability was probably caused by the injury he sustained on December 11, 1932, in June, 1938, when so advised by Dr. Crawford. He hired Johnson & Oliphant, attorneys, to represent him and they filed his claim on July 28, 1938. He consulted six or seven doctors before he was examined by Dr. Crawford but was never advised by any of them that he had rheumatism or that his trouble was caused by his teeth, tonsils or local infection. He knew there was something the matter with his back after December 11th, and some six months subsequent to that time he could not secure or hold a job, could not do manual labor, no one told him he had no claim or advised him not to file a claim. Dr. Riddler, the physician of appellant, advised him three or four weeks after the injury that there was nothing wrong with his back, that it was just a catch, but appellee knew, he says, he got the catch in the injury and knew that when the doctor told him there was nothing wrong with his back that such statement was not true.

The record in this case discloses that the appellee is thirty-three years of age, possesses average mentality and business ability, as is shown by the businesses which he has conducted since his injury. There is no suggestion in the record that appellee was imposed upon by anyone connected with his employer or anyone connected with appellant or deceived by anyone else relative to his injury or his claim.

In Johnson v. Employers Liability Assur. Corporation, 131 Tex. 357, 112 S.W.2d 449, 450, in passing upon the testimony offered to sustain good cause, Commissioner Martin, speaking for the Supreme Court, said: "If, as found by the jury, the claimant had an injury producing a hernia in December, which appeared immediately and caused pain, it overtaxes human credulity to believe he did not find it out until the following August. About as plausible would be the contention that a claimant lost his forefinger but did not know it until eight months after, when, as here, the testimony shows he was apparently normal and going about his daily life as usual. Here we

have the paradoxical situation of a jury knowing he had a hernia, but the party, who bore upon his body the evidence of it, and who suffered the pain, was without knowledge of that which he could see and feel. It he did not know it by its medical name, he unquestionably knew he had the injury."

This is not a case where the complainant was not apprized of the injury at the time of the accident nor one that developed entirely after the accident. According to the testimony of appellee the injury was immediately followed by pain in his back. He went to bed for two days when he got home because he was suffering with his back, then consulted appellant's doctor relative to the pain in his back and was advised there was nothing the matter with his back. The pain grew worse notwithstanding the doctor's advice, and he quit work in a few weeks because of the condition of his back. About six months after the injury he knew his back was in bad condition, could do no manual labor that required lifting or stooping, knew that what the doctor pronounced a catch was due to the injury to his back. This condition continued for more than five years. He says he probably thought he had rheumatism though he had never had it before he was hurt, was not advised by any of the numerous physicians that it was rheumatism, nevertheless, he states that he never connected his suffering or inability with the injury until in June, 1938 after he had consulted Dr. Crawford. Doubtless, he did not know whether the pain produced by the injury was due to a strain of the muscles, ligaments or tendons or a sprain or fracture of a joint or a vertebra, but obviously, to our minds, a person of ordinary prudence would have connected his pain and inability with the injury he received on December 11, 1932 before five and a half years had elapsed. Texas Employers' Ins. Ass'n v. McGehee, Tex.Civ.App., 75 S.W.2d 123; Texas Employers' Ins. Ass'n v. Herring, Tex.Com.App., 280 S.W. 740.

■■ The provision that the employee must make his claim within the time specified in the statute, Vernon's Ann.Civ.St. art 8307, § 4a, is mandatory, Bailey et al. v. Texas Indemnity Ins. Co., Tex.Com.App., 14 S.W.2d 798, and if he does not the burden is on him to show that good cause existed to justify his failure. This issue depended entirely on appellee's testimony which is indefinite, uncertain and unsatisfactory. The facts in the record, in our opinion, are conclusive against the statement that the complainant never connected his pain, suffering and incapacity with the accidental injury he received until in June, 1938. The finding that good cause existed in this case for the long delay in filing the claim is an abuse by the jury, we think, of their province as the triers of facts as we judicially know they sometimes do. Kuntz et al. v. Spence et al., Tex.Com, App., 67 S.W.2d 254.

The testimony, we think, is insufficient to sustain the finding of good cause and the court erred in refusing to direct a verdict in behalf of appellant and to sustain its motion for a judgment non obstante veredicto.

The judgment is reversed and rendered.

### On Motion for Rehearing.

In the original opinion in this case the court reversed the judgment of the trial court in favor of appellee and rendered judgment against him for appellant.

In his motion for rehearing the appellee strenuously insists that the testimony, considered in the light most favorable to him, is sufficient to support the finding of the jury on the issue of good cause and warrant the judgment of the court in his favor.

■ We have re-examined the record and concluded that we were in error in rendering judgment against appellee and to that extent the motion for rehearing is granted. In our opinion, a great preponderance of the evidence impels the conclusion that the finding of the jury on the issue of good cause is unwarranted.

In Bankers' Life & Loan Ass'n v. Chase, 114 S.W.2d 374, 378, this court said:

"It is the duty of this court to set aside a judgment of the trial court when the evidence so greatly preponderates against such judgment that a new trial should be granted in the interest of justice.

"In Logue v. Southern Kansas Ry. Co., 106 Tex. 445, 448, 167 S.W. 805, 806, the Supreme Courts states the law as follows: 'The rule is that the Court of Civil Appeals may reverse a judgment on the weight of the testimony, but that court cannot render judgment if the evidence, when considered in the light most favorable to the party in whose favor the judgment is rendered, would sustain the judgment of the trial court.'"

See also Texas Employers' Ins. Ass'n v. Bauer, Tex.Civ.App., 128 S.W.2d 840.

The motion for rehearing is granted, the judgment heretofore entered in this court reversing and rendering the cause against appellee is set aside and the judgment of the trial court is reversed and the cause remanded.