**TEXAS EMPLOYERS' INS. ASS'N v. LEAKE.**

No. 14780.

*Court of Civil Appeals of Texas. Fort Worth.*

Sept. 13, 1946.

Rehearing Denied Oct. 18, 1946.

Nelson, Montgomery & Robertson, of Wichita Falls, for appellant.

John J. Watts, of Crane, for appellee.

SPEER, Justice.

This is a workman's compensation case. Appellee, H. B. Leake, an alleged injured employee of Phillips Petroleum Company, sued appellant Texas Employers' Insurance Association, as carrier of compensation insurance for the employees of the named employer, to set aside an award theretofore made by the Industrial Accident Board and to recover compensation.

Tried to a jury on special issues, the verdict was favorable to appellee and judgment was entered on the verdict; appellant has perfected this appeal.

From the pleadings and evidence offered, it appears that appellee was in the course of his employment where he had worked for 10 years or more and while assisting several other employees in carrying some heavy pipes in "July or August," 1935, felt something "slip" in his back.

He told his foreman the next day that he hurt his back the preceding day and the foreman said "maybe its rheumatism." He filed no claim with the Industrial Accident Board until September, 1944. He alleged as "good cause" for not having filed his claim sooner, substantially, that he considered his injuries trivial at first, and that he consulted numerous doctors who advised that he had rheumatism; he consulted dentists who pulled his teeth in an effort to cure his rheumatism and that none of said doctors advised him that his disability was due to said accident, and that as soon as he discovered that all of his disabilities were the natural result of said accident, he filed his claim for compensation.

Fifteen special issues were submitted. In response to some the jury found that various doctors advised plaintiff (appellee) his disability was due to disease not connected with the accident sustained in July or August 1935. That plaintiff relied upon such doctors' representations to such an extent that he refrained from filing claim for compensation sooner than he did. That same constituted good cause for not having filed his claim for compensation sooner than same was actually filed. There was a finding of accidental injury to plaintiff's back while in the course of his employment in

July or August, 1935. In response to other inquiries it was found that the accidental injury in July or August, 1935, rendered plaintiff permanently and totally incapacitated to perform labor from and after said date.

First and second points of error relied upon are to the effect that there was no evidence of probative value to support the jury's verdict that plaintiff had good cause for not having filed his claim for compensation within six months after the alleged injury and, further, that such evidence offered was insufficient to establish good cause for not having so filed his claim for compensation.

Appellant assigns several other asserted errors, such as entering judgment for permanent total disability from the date of the alleged injury; and ordering the judgment to bear interest from the maturity date of each installment and further as to the manner in which certain issues were submitted. We have concluded that the first and second points should be sustained, and if we are correct in this, other assignments need not be discussed in detail.

Our Workmen's Compensation Act, as amended from time to time, was designed to provide adequate and prompt compensation, within the limits of the law, to employees when accidentally injured while in the course of their employment. Such compensation is not merely for loss of earning but for loss of earning capacity. Traders & General Ins. Co. v. Turner, Tex. Civ.App. 149 S.W.2d 593, error dismissed, judgment correct; Federal Underwriters Exchange v. Polson, Tex.Civ.App., 148 S. W.2d 956, error dismissed, judgment correct; Fidelity & Casualty Co. of New York v. McLaughlin, 134 Tex. 613, 135 S. W.2d 955. It does not require citation of authorities to support the rule in this state that the Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq., must be liberally construed in favor of the injured employee.

Article 8307, Sec. 4a, R.C.S., relating to notice being given by an injured employee, provides in effect that he shall apprise the association or employer within thirty days after receiving the injury and

844

shall make claim for compensation within six months next after the accidental injury, otherwise he cannot maintain a suit to recover compensation, except under conditions provided in the same article, which exception reads: "For good cause the board (Industrial Accident Board) may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice, and the filing the claim before the board."

The liberality with which the Act is to be construed cannot be extended so as to ignore the plain unambiguous language by virtue of which the Legislative Act is to effectuate its most wholesome purpose. Its very strength lies in the language of the statute and any recovery must come within its provisions. There are many essential elements which enter into the rights of one seeking to recover compensation under the Act. A compliance with each is necessary for the courts to acquire jurisdiction on the statutory appeal from the award of the Board. Federal Surety Co. v. Jetton, Tex.Com.App., 44 S.W.2d 923; Scott v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 118 S.W.2d 354, error refused; Johnson v. Employers Liability Assur. Corp., 131 Tex. 357, 112 S.W.2d 449.

The question before us is, was the testimony in the instant case of sufficient probative force to support a finding by the jury of "good cause" shown to excuse appellee for not having filed his claim for compensation within six months after the date of the alleged injury?

There are many cases to be found in which it was held that the bona fide belief of a claimant that his injuries were slight or trivial, and that even after he had consulted physicians, had been told by them that his injuries were slight and that he would soon fully recover, and when claimant believed and relied upon such medical advice, and in reliance thereon, delayed the filing of claim for compensation, "good cause" was properly shown. An exhaustive discussion of that point and many cases cited may be found in Consolidated Underwriters v. Pruitt, Tex.Civ.App., 180 S.W.2d 461, writ refused, want of merit. It is easy to perceive how such a situation

could arise. An employee would receive an injury which, to him, appeared trivial and he in good faith believing this, would not file a claim, but subsequent developments even after six months time would demonstrate that he had received a serious injury. Again in some instances employees inhale substances perhaps without knowing it at the time, and months later, although not falling within the class of occupational diseases, serious developments appear. Naturally, such a provision in the law for the Board to waive the limitation of time for filing is eminently proper. The test laid down by the courts in such cases is denominated "prudence"—"What would an ordinarily prudent person have done under the same circumstances?"

Appellee's plea of good cause in this case consists in the main of his own testimony. The substance of what he said, taken in the light most favorable to his contention and the jury finding, is: He and others were carrying some heavy pipes sometime in July or August 1935 and at a time when a greater part of the weight fell upon him he felt something "slip" in his back; he did not pay so much attention to it at the time, and did not remember what if any other similar work was done that day; when he went home after work hours, he was in great pain and could not get on the bed, nor remove his clothes. He told his wife that night that he had hurt his back that day and she made hot applications to it and applied liniments; he could not dress himself next morning, but with her help he dressed and went back to the job; he was in great pain at all times thereafter, sometimes more than others, but was never free of pains in his back; he continued his regular work, but at times when heavy lifting was to be done, he had to get down on his knees to raise up with the load; his fellow workers "knew he had been hurt" and they took as much of the heaviest work off of him as they could, yet he said he could have done it without their help. His wife corroborated his statements concerning his condition and suffering when he was about home. She said he (appellee) knew he was hurt. He said he saw Dr. Rosser in September after he was injured.

Appellee further testified that he had had rheumatism in his hip and sinus trouble before he claimed to have been injured and that he had been treated for both prior to his accident. He said when he went to Dr. Rosser in September after his injury Dr. Rosser said he had rheumatism and treated him for prostrate trouble thinking that would relieve him. He first testified that he believed he told Dr. Rosser of receiving the injury in July or August before, but was not positive about it. That he could be mistaken about that. He was confronted with his deposition in which he had said he did not inform Dr. Rosser or any other doctor that he had consulted about his trouble, except Dr. Snow (in 1944) of his back injury, and he said upon trial that that statement may be true, he did not remember.

He further testified at the trial on cross examination that he knew on the day he received the injury that he was hurt and that he had suffered intense pains in his back at all times since but the doctors all said it was rheumatism and that is what he was going by. He said he had continued to work at the same job or similar ones for the same company at all times since he claimed to have been injured in 1935, and that he had had three or more raises in wages during the time; that his company moved him up to Hutchinson County in 1940 where he dug ditches for six months; that his legs began swelling and his veins got very large sometime in 1942 and in the fall of that year he had an operation for varicose veins and had been unable to work at his regular job since that time.

In response to different inquiries by his counsel as to why he had not filed his claim for compensation earlier than he did (1944) he said: "Well, I had to work to live and if I filed a claim and didn't have anything but rheumatism, I wouldn't have no job. I thought I was hurt but I was going by what these doctors said, they thought I had rheumatism and that is what I was going by." Another time he answered: "Well, George Allison (the foreman) told me it might be rheumatism in my back; now when you are working for one of these companies, when you complain too much, why then they don't need you very long." Paraphrasing the questions and answers, he further explained his delay, in filing claim, this way: Dr. Snow of Abilene was the doctor my counsel sent me to in the fall of 1944, and he is the first doctor that told me the cause of my trouble was the injury received in 1935. He said when Dr. Snow examined him he filled out blanks and his counsel filed his claim for compensation early in September, 1944.

Appellee further testified that he contacted his present counsel about the first of September, 1944, and in consultation told his counsel of having received an injury to his back in 1935 and counsel directed him to consult Dr. Snow at Abilene; he did as directed and Dr. Snow examined him, making X-rays and found his trouble, and he filed the claim with the Board as above indicated.

Appellee's testimony discloses that since receiving the alleged injury, he had consulted and been treated by the following named physicians: A chiropractor (name not given), Dr. Rosser, Dr. Kimbro, Dr. Griffin, Dr. Stripling, Dr. Mangum, Dr. Hyman, Dr. Leake (appellee's brother) and Dr. Snow. He said each of these doctors were of his own choice and so far as he knew, none of them represented the appellant association. Dr. Snow was the only one of the list of doctors called by appellee to testify. Dr. Rosser was called by appellant.

Dr. Snow testified at the instance of appellee; he detailed a minute physical examination of appellee and made X-ray pictures of the lumbar region including the pelvis; he had a history of the injury received in 1935; he described in medical terms the calloused condition found, a fractured vertebra etc., which indicated an old injury. In response to hypothetical questions embracing much of appellee's testimony, including, "assuming that he (appellee) continued to work with this pain in his back because he had to educate his children and had one child in college at the time," also assuming that he was "later operated on for varicose veins and that he has not returned to his work since 1942," the doctor gave it as his opinion that the injury

sustained in 1935 was the cause of appellee's disability to work and that his disabilities had been total and permanent since he received the injury.

Dr. Rosser, the first regular practicing physician appellee claims to have consulted in September after the injury in 1935, testified for appellant, in effect contradicting appellee as to when he treated him. He said, substantially, that it had always been his custom to make a record of all patients treated by him, and that his record showed that he first saw appellee in June 1938; in his practice he kept a record of the history of each case and that he did so in appellee's case; that appellee complained of pain in his back and down his legs, had been treated by Dr. Kimbro of Wichita Falls for prostrate; he examined appellee, his teeth and prostrate, since appellee believed his prostrate was his trouble; on July 18, 1938, appellee brought some X-ray pictures said to have been made by Dr. Leake, his brother; the pictures were examined and Dr. Rosser said he did not believe from the pictures that appellee had had a slip in the sacro-iliac; the doctor's record indicated that he had seen appellee professionally nine or ten times between June, 1938, and December, 1939. He said he had no record of appellee having told him that he had received an injury in 1935; if appellee had told him of that injury, it would have occupied a prominent part in his record; that he would have noted it and made X-rays for a careful inspection.

Texas Employers Ins. Ass'n v. Mitchell, Tex.Civ.App., 142 S.W.2d 626, writ dismissed, involved the issue of good cause. The claimant had an injury to his back in 1932 and knew it at the time; went to bed and was doctored by his wife for a couple of days and tried again to work; the company's doctor advised him there was not much wrong and that he would be all right soon; he knew all the time that he was hurt notwithstanding the doctor's advice; at the end of six months he realized that his back was in bad condition; however he declared that he did not connect his condition with the injury; that he first learned in 1938 when advised by a doctor that his trouble was caused by the injury in 1932.

He filed claim in 1938. The court cited and quoted from Johnson v. Employers Liability Assur. Corp., 131 Tex. 357, 112 S.W.2d 449, in which the court discussed a plea of good cause in a hernia case, based upon the fact that the party delayed filing because he was unaware of the nature and extent of his injuries. In the Mitchell case it was held that while the issue of good cause was ordinarily one of fact for the jury, the testimony of Mitchell, which was indefinite, uncertain and unsatisfactory, did not support the jury finding of good cause. To quote further from the opinion, it was said [142 S.W.2d 630]: "The finding that good cause existed in this case for the long delay in filing the claim is an abuse by the jury, we think, of their province as the triers of facts as we judicially know they sometimes do. Kuntz et al. v. Spence et al., Tex.Com.App., 67 S.W.2d 254."

It is the settled rule in this state that generally the issue or question of good cause is one of fact for jury determination. But it is equally well settled that when claimant's testimony on the point is taken most strongly in his favor and it admits of but one reasonable conclusion negativing good cause, the question becomes one of law. Texas Indemnity Ins. Co. v. Cook, Tex.Civ.App., 87 S.W.2d 830, writ refused; that court held that claimant's testimony brought the case under the rule last announced by us and that the testimony did not support the jury finding of good cause.

In LaCour v. Continental Casualty Co., Tex.Civ.App., 163 S.W.2d 676, 678, writ refused, the issue of good cause for not filing claim for a period of about seven years was involved. The employee received an injury and was advised by a representative of the insurance carrier that the forms given him were of little importance and that the company would take care of him; that he was ignorant of the law requiring filing of claim with the board and such things. The question before the court was whether proof of these things would support a jury finding of good cause. The court again announced the rule to be that generally the test of good cause was ordinary prudence, which in turn was, as a rule, a jury issue of fact. "But that, where

the evidence, taken most strongly in favor of the claimant, admits of but one reasonable conclusion, negativing good cause, the question becomes one of law." It was held that good cause was not shown.

By appellee's own testimony, it is definitely shown that he knew at the time of receiving the injury in 1935 that he was "hurt"; that he suffered intense pains in his back that evening, the next morning and at all times thereafter for nine years. Knowledge of his employer's compensation insurance policy for his benefit is imputed to him as well also the legal requirements of filing a claim for compensation within the statutory time. We are unable to bring ourselves to the conclusion that a man of ordinary intelligence and prudence, suffering as he must have been for those nine years, failing to get relief from all those doctors whom he chose to consult, would wait nine years to consult an attorney to ascertain his legal rights. It is unmistakably true that the very first attorney he did consult advised him of his legal rights and remedies, resulting in the filing of claim for compensation. Appellee strongly intimates, if he doesn't say it in so many words, that he knew it was his duty to file a claim, but feared if he did so and it was denied, it would terminate his position and impair his future prospects for procuring another. This has been held to not show "good cause" for failure to file. Texas Indemnity Ins. Co. v. Cook, Tex.Civ. App., 87 S.W.2d 830, writ refused.

■ We also note from appellee's testimony that he developed varicose veins during 1942 and had an operation for that trouble in the fall of that year, and was unable to work at his regular employment after that operation. This was two years before he filed his claim for compensation in September 1944. In so far as we are able to find, the record is silent as to whether or not the injury sustained in 1935 had any connection with or in any way contributed to the trouble for which he was operated; nor does the record disclose that he consulted any physician about his trouble between the time he was operated and the date on which he consulted Dr. Snow at the instance of his counsel in September, 1944.

Of course he did not rely, for delay in filing, upon what any physician told him during that period of two years, for he consulted none. To support a plea of good cause for failing to file claim within the statutory time, "good cause" must appear for the whole period from the expiration of six months after the date of the accidental injury to the time claim is actually filed. Time of filing will not be waived merely because good cause is shown for a portion of the time of such delay. LaCour v. Continental Casualty Co., Tex.Civ.App., 163 S.W.2d 676, writ refused; Petroleum Casualty Co. v. Dean, 132 Tex. 320, 122 S.W.2d 1053; Young v. Safety Casualty Co., Tex. Civ.App., 168 S.W.2d 884, writ refused; Petroleum Casualty Co. v. Garrison, Tex. Civ.App., 174 S.W.2d 74, writ refused, want of merit, and cases there cited.

■ There are many cases in the books in which the courts have discussed the question of good cause, but we have not been cited to nor have we found any, where the precise situation now before us was involved. We cannot say that any particular number of months ·or years should be set as a test or limitation beyond which one may not go, but we are persuaded that facts and circumstances should control each situation. We have carefully read and re-read every word of the testimony offered and to us it seems indefinite, uncertain and unsatisfactory to establish the facts constituting good cause as contended by appellee. We do not believe that the Legislature intended by the language used in the Act: (1) That time of filing claim for compensation within six months after the injury would be waived by the Board or the Courts for an indefinite period of time to enable the claimant to continue work at his regular wage, "with this pain in his back because he had to educate his children," receive the benefit of increased wages for seven years, then when forced to quit work after an operation for varicose veins, go back to the date of the claimed injury and collect compensation as provided by law and rely upon the contention that his own doctors told him he had rheumatism when he had not apprised them of having received an injury. (2) That an

employee who "knew," "believed" or "rather had an idea" (as did appellee in this case) he had received an injury, could elect to continue his labors at a wage much greater than compensation would have been during the seven years of delay and then offer as an excuse that he relied upon what his doctors told him when they had no knowledge of his having been injured. Nor (3) permit an injured employee to offer, in effect, the excuses for not having filed, that he feared to file a claim or that if he complained too much he would have no job, or that if it developed that he had received no injury he could not again procure employment, or to wait nine years for filing in an effort to find evidence to support his contention that he had received a compensable injury.

To pursue the thought a little further, he might have gone on an indefinite number of years without telling any doctor that he had received an injury, as he did for nine years, and without consulting an attorney, before he could find some doctor or attorney who could advise him of his rights and remedies. In such circumstances we think "good cause" for delay would not be shown.

It is our conclusion, and we so hold, that appellee's own testimony relating to good cause, when taken in the light most favorable to him, impels the inevitable reasonable conclusion that he has negatived "good cause," and it follows from the cited authorities that it became a question of law and not one of fact. If we are correct in this, the jury verdict finding good cause is immaterial and of no effect upon the judgment that should have been rendered.

If we be in error in concluding that the question is one of law and not of fact, then in the absence of any testimony whatever showing good cause for failure to file claim after the operation in 1942 when appellee was compelled from his disabilities to quit work, until 1944 when it was filed, there is no testimony to support the jury finding upon which the judgment was entered.

We therefore reverse the judgment of the trial court and render judgment for the appellant.

Reversed and rendered.