## TEXAS EMPLOYERS INS. ASS'N v. CHAMBERS.

### No. 15182.

Court of Civil Appeals of Texas.
Fort Worth.

Oct. 13, 1950.

Rehearing Denied Nov. 17, 1950.

Nelson, Montgomery & Robertson, and Lee Sellers, all of Wichita Falls, for appellant.

Bullington, Humphrey, Humphrey & Fillmore and C. Coit Mock, all of Wichita Falls, for appellee.

McDONALD, Chief Justice.

Appellee Chambers was awarded judgment for workmen's compensation on a favorable jury verdict. The insurance car-

rier appeals, presenting eleven points of error, under which it contends, among other things, that there was no evidence of probative value to support appellee's plea of good cause for failing to file his claim with the Industrial Accident Board within the time required by Article 8307, Sec. 4a, R. C.S., and that there was no evidence of probative value to show that the disability from which appellee was suffering resulted from an accidental injury. Appellant complains of the refusal of the trial court to instruct a verdict in its favor because of the matters just mentioned.

On December 28, 1943, appellee Chambers entered the employment of Wichita Engineering Company. His duties were to operate what was called a sand blast gun, which consisted in part of a hose, with controls and other equipment, through which sand was forced under high pressure, and which was used to produce smooth surfaces on pieces of metal. The sand blasting operations were carried on in a small room about eight by sixteen feet in size. Openings in the room were kept closed to prevent the escape of the sand from the room. Most of the sand would fall to the floor, after which it would be picked up and again run through the sand blasting device. Some of the sand, however, would be broken up into such fine particles that there was constantly present in the room what appellee described as a fog of dust, of such density, he said, that a person could not ordinarily see from one end of the room to the other. Lights were necessary to enable the employees to see their work. Appellee and other persons doing similar work in the room wore masks and respirators. Appellee continued in this employment for about a year and a half, leaving in May of 1945.

Appellee testified that shortly after he started working in the room he began to have fever on account of the dust, and that, as he expressed it, he would have to clean out his head with salt water, and a few times had a doctor do it. He said that the sand and dust were awful, and it is undisputed that appellee knew during the time he was in such employment that he was suffering ill effects from the inhalation of sand and dust. He said that he was permitted to work about as many hours per day as he wished, and the work record of his employer, which was introduced in evidence, confirms his statements that he worked long hours.

According to appellee's testimony, he was in good health at the time he entered the aforesaid employment, and had never suffered any serious illness. He testified that his physical condition became so bad by May of 1945 that he was compelled to cease doing the sand blasting work, and entered the service of another employer. By July of 1946 his condition had further deteriorated to the extent that he left the service of the last mentioned employer. After that he undertook to work for himself, building some small houses, but by April of 1947 had become unable to do any work of any kind. On April 4, 1947, a physician advised him that he was suffering from a tubercular infection of the lung, in an advanced stage. Thereafter he received treatment in various hospitals, underwent several operations, and was continually confined to his bed.

The claim for workmen's compensation is based on the theory that the tuberculosis was the result of inhalation of excessive amounts of sand and dust on October 20, 1944. As has been said, the openings in the room where the sand blasting was done were kept closed, but there was an exhaust fan in the room which was installed for the purpose of drawing outward from the room some of the dust which has been described. Shortly after appellee began work on October 20, 1944, the exhaust fan was damaged, and was not in operation most of the day. Appellee described the dust as being much worse on that day, a hundred per cent worse, he said, than it usually was. He said that he inhaled more sand and dust than usual on that day. Although he had suffered fever, coughing and dust in his head during all of the time he had worked at said employment, he felt on that day, for the first time, pain in his chest. The chest pain was so discomforting that he complained to the superintendent on that day, and on the following day was sent to the doctor by the superintendent. The doctor cleaned out his head, as appellee always expressed it, and

appellee went back to work and continued to work until May, 1945. The chest pains were somewhat severe for two weeks, then became less severe. Although he would have relief from the chest pains some of the time, his chest hurt then, he said, and had hurt ever since.

In May of 1949 appellee consulted an attorney, who in turn consulted the physician who was then treating appellee. Claim for compensation was filed with the Industrial Accident Board on May 27, 1949, some four and a half years after the date of alleged accident.

The facts relied on by appellee as good cause for the delay in filing claim may be stated in substance as follows:

(1) Appellee delayed filing his claim until April 4, 1947 (when he first learned from a physician that he was suffering from tuberculosis), because he believed his injuries were temporary and trivial and such as would not disable him from performing the tasks of an ordinary workman.

(2) Such belief was good cause for failure to file before April 4, 1947.

(3) Appellee was physically incapacitated at all times from April 4, 1947, until May 27, 1949, the date the claim was filed.

(4) Such incapacity caused him to delay filing claim until May 27, 1949, and was good cause for not filing before said date.

(5) Appellee failed at all times prior to the time claim was filed to attribute his disability to the accident of October 20, 1944.

(6) Such failure was good cause for not filing claim before it was filed.

Reviewing the grounds just stated, it is seen that appellee relied on two grounds as good cause for the delay in filing claim. The first, consisting of two separate factors, was the belief he held until April 4, 1947, that his injuries were temporary and trivial, and his physical incapacity from April 4, 1947, until the date claim was filed. The second was his failure to attribute his disability to the excessive inhalation of sand and dust on October 20, 1944.

Our appellate courts have frequently been called on to determine whether the evidence in a given case was sufficient to raise a jury issue as to good cause for delay in filing claim beyond the statutory period of six months from the time of the accident. The difficulty lies not in ascertaining or restating the rules which our courts have laid down, but in applying them to the evidence in a particular case. The test is whether the claimant prosecuted his claim with the degree of diligence an ordinarily prudent person would have exercised under the same or similar circumstances. Whether or not such degree of diligence was used is ordinarily a question of fact to be determined by the jury or the trier of facts. It may be determined against the claimant as a matter of law, only when the evidence, construed most favorably for the claimant, admits no other reasonable conclusion. Hawkins v. Safety Casualty Co., 146 Tex. 381, 207 S. W.2d 370. In the case just cited it is said that no set rule can be established for measuring diligence in such respect, and that each case must rest on its own facts. To repeat what we said in Texas Employers' Ins. Ass'n v. Leake, Tex.Civ. App., 196 S.W.2d 842, writ ref. n. r. e., it cannot be declared that any particular number of months or years should be set as a test or limitation beyond which one may not go. The facts and circumstances should control each situation.

Bona fide belief of a claimant that his injuries are not serious may be sufficient to constitute good cause for delay in filing claim. Hawkins v. Safety Casualty Company, supra. It cannot reasonably be said, under the undisputed evidence, that appellee continued to believe until April 4, 1947, that his physical ailments were temporary or trivial. He had been compelled to leave the employ of Wichita Engineering Company in May of 1945 on account of his physical condition, which, according to his own testimony, he at that time attributed to the inhalation of sand and dust during the time of said employment, and in July of 1946 he had become unable to follow any line of employment. For a while he tried to work a little for himself, but had to give that up. The argument in his brief seems to be, not that he believed his ailments were temporary or

trivial, but that he believed that the ill effects he had suffered from the excessive amounts of sand and dust on October 20, 1944, were trivial and temporary. There is a sort of overlapping of this ground of good cause with his asserted failure to attribute his disability to the events of October 20, 1944, until the time of his conferences with his attorney and the conference of his attorney with his physician in May of 1949.

■ To establish a causal connection between the unusual events of October 20th, and the tubercular condition which was the immediate cause of appellee's disability, proof was required of facts and circumstances which would warrant a finding of such causal connection. Appellee testified at length about the pains in his chest which he suffered for the first time on that day, and described other symptoms which he undoubtedly regarded as proof of the connection between the inhalation of excessive amounts of sand and dust on that day and the disability which he finally suffered. It is difficult to find evidence sufficient to support the theory of a causal connection between the alleged accident of October 20th and the tubercular infection without being compelled to say that the same evidence shows without dispute that appellee knew that he had suffered consequences of a serious nature on account of the happenings of that day, and likewise that the evidence shows without dispute that he had no good cause for not filing claim for compensation sooner than he did. He knew about the general working conditions, and he knew about the unusual conditions which arose when the exhaust fan was not operating. He observed at that time the difference in such conditions, and the difference in the ill effects he suffered as a result of what happened on that day. He reported the matter to his superintendent, and was sent to the doctor for treatment. Theretofore there had been no pain in his chest, thereafter his chest hurt and continued to hurt to the time of trial. In the interrogation of the medical witnesses by appellee's counsel, much point was made about the distinction between pains in the chest and the discomfort he had suffered in the nasal and sinus regions of his head. As we view the evidence, it is conclusive against appellee, as a matter of law, on his contention that he had good cause for not filing claim until April 4, 1947, because of his belief that his injuries were trivial and temporary.

■■ It is undisputed that he was physically incapacitated to do any kind of work from April 4, 1947, until May 27, 1949, but we are unable to find anything in the evidence to warrant a finding that his physical incapacity caused him to delay filing claim for compensation. If there was any reason for failure to file claim during this time, under the evidence, it must have been appellee's failure to attribute his disability to the alleged accident of October 20, 1944. The proof in this respect is about like the proof concerning his belief that the injuries resulting from the alleged accident were trivial and temporary. Although there is some ground to think that appellee did not attribute his disability to the alleged accident until the time of the conferences with his attorney in 1949, it is difficult to reconcile his plea of failure to attribute the disability to the accident, with the testimony which came from appellee himself concerning the causal connection between the accident and the disability. The effort to prove the one tends to defeat the effort to prove the other. We have examined very carefully the testimony of the physicians who testified, and there is grave doubt in our minds whether any of them testified in any clear manner to an opinion that tuberculosis developed as a result of the excessive inhalation of dust and sand on October 20th, rather than as a result of the day to day inhalation of sand and dust during the period of some eighteen months when appellee worked in the sand blast room. Many of the questions addressed to the physicians and some of their replies are so confusing that it is next to impossible to say with confidence just what some of their testimony was. In view of the unequivocal testimony from appellee as to the unusual nature of the conditions prevailing on the day the fan was broken, and his testimony concerning the more than usual ill effects he suffered as a result, we are not quite willing to say that there is no evidence of probative value to estab-

lish the causal connection between accident and disability, but the same testimony which leads us to this conclusion also leads us to the conclusion that appellee failed to show good cause for failing to file claim during more than nine times the statutory limitation period.

Appellee's unfortunate physical condition presents a strong appeal to our sympathies, but we are bound by the provisions of the law which limit recovery in the case to disability resulting from accidental injury, and which require appellee to show good cause for the delay in filing his claim for compensation.

The judgment of the trial court is reversed, and judgment is here rendered that appellee take nothing by his suit.